PRO VO STY, J.
Louis Schadwell died in 1873, leaving a widow and children, issue of his marriage. His estate consisted entirely of community property. His widow, survi-f- or in community, took possession of it, and retained this possession until her de'ath in November, 1917.
*1033 She did not remarry.. One of her sons applied for the administration of her succession, and an order was made for notice of the application to be published and an inventory to be taken. Before this order could be carried out another of the sons opposed the application for administration, on -the ground that the succession owed no debts, and that an administration was therefore unnecessary. A few days thereafter the same opponent produced the testaments of the two decedents, and asked that the same be probated, and that he be appointed dative testamentary executor, and that an inventory be taken. The court ordered notice to be published of the application for executorship and an inventory to be taken, and canceled the orders theretofore made for an administration. The inventory was duly made, and the proees verbal thereof duly filed. The same one of the sons who had applied to be appointed administrator filed an opposition to the appointment of an executor, as being unnecessary, there being no debts, and that the same could serve no useful purpose. A few days thereafter the same one of the sons who had applied for the executorship joined a majority of the other children and heirs in a petition, filed in the same succession proceedings, alleging that there were no debts; that all the heirs were majors, except one, who was a minor, but over 18 years of age. and emancipated; that these-heirs were owners in indivisión of the inventoried property; that the petitioners were unwilling to remain longer in indivisión; and praying that their coheirs be cited, and that there be judgment sending the petitioners and their coheirs Into possession, and decreeing a partition by licitation, that the property be sold for cash, and that the parties be referred to " a notary public to complete the partition. The coheirs thus cited filed an answer, admitting that they were co-owners, that the property was indivisible in kind, and joining in the prayer for a partition by licitation.
The court accordingly, on January 24, 1918, rendered judgment, sending the said heirs into possession, and ordering a partition by licitation, and appointing a notary to carry out the partition.
The property was sold, and, the parties having in due course appeared before the notary designated by the court for making the partition, disagreement arose over various items, among which was that of the commission to be allowed to the auctioneer who had made the sale of the property, and the notary referred the parties to the court for settling their differences. We are concerned now only with the question of the proper allowance to be made to the auctioneer.
The law on the subject is Act 130 of 1914, amending Act' 104 of 1896, which provides that “on sales of succession property” the compensation of an auctioneer shall be “a commission on each adjudication of not more than two per cent, on the first $10,000, and one per cent, on the excess,” and that on judicial sales of real estate made under order of court it shall not be more than 2% per cent, on the amount of each adjudication.
[1,2] Judicial sales are sales made by order of court, and a sale of succession property can be made only by order of court; hence all sales of succession property are judicial sales, but special provisions in a statute must be read as exceptions to the general provisions of the statute; hence the rule provided by this statute for sales of succession property must be taken to be an exception to the rule provided for judicial-sales in general, and as a consequence our question must be as to whether the property in question in this case was succession property.
[3] By the term “succession property” can only be meant -property belonging to or depending upon a succession, and hence our *1035 question resolves itself into whether the property in question belonged or depended upon a succession.
[4] Property is succession property while in transit from the decedent to those who are to succeed him in the ownership and possession of it. Thus in State v. Brown, 32 La. Ann. 1020, where an indictment for severing from the soil had laid the ownership of the soil in “the Succession of N. W. Sen-tell,” the court said:
“It is contended that ownership cannot be laid in the succession of a person deceased, but must be laid in, the executor or administrator by name. This is undoubtedly the rule of the common law, based upon the doctrine recognized in that system, that the legal title to the estate of the deceased vests in the administrator thereof, who is, in the eye of the law, technically the owner; and hence, where ownership is charged, it must be laid in him.
“This doctrine, however, finds no place in the law of Louisiana. The maxim, ‘Le mort saisit le vif,’ is expressly embodied in our Civil Code, and excludes the interposition of any temporary and qualified ownership, such as that of administrators, between the deceased and his heir. C. C. 940 et seq.
“Pending the acceptance or rejection by the heir, which, when made, retroaets to the instant of death, and pending the administration, all ‘the estates, rights, and charges which a person leaves after his death’ are vested in, and belong to, the abstraction called ‘succession,’ as expressly stated in articles 872 and 873 of the Civil Code.”
In Carter v. New Orleans, 33 La. Ann. 816, the court quoted this last paragraph for sustaining a tax assessment In the name of “Estate of N. R. Jennings,” where the contention was that it should have been in the name of the heirs.
[S, 6] Formerly this transit of the property from the decedent to his successors could be instantaneous and without any legal ceremony whatever, by operation of the maxim, “Le mort saisit le vif.” “A succession,” says 940, C. C., “is acquired by the legal heir immediately after the death of the deceased.” By “a succession” is here meant “the estates, rights and charges which a person leaves after his death.” Article 872, C. C. But the Inheritance Tax Law (Act 109, p. 173, of 1906) now makes it unlawful for heirs to take possession without having first obtained an order of court sending them into «possession. They become owners from the moment of the death of the decedent (Tulane University v. Board of Assessors, 115 La. 1025, 40 South. 445), but they cannot legally take possession.
We have a whole body of rules relative to successions which owe debts, or in which legacies are to be delivered; but as the successions of Mr. and Mrs. Schadwell owed no debts, and there were no legacies to be delivered, that body of rules may be passed over in silence.
[7] As the record does not show in whose actual possession the property of this succession was after the death of Mrs. Schadwell, we have to infer that it was in the actual possession of the heirs, its owners, since there was nobody else to have possession of it; there not having been any administrator or executor appointed to take and hold possession of it. The Inheritance Tax law expressly authorizes heirs to hold such actual possession.
[8] For converting such actual possession into legal, or, in other words, full and complete, possession, nothing further is required than to pay the inheritance tax, and obtain an order of court sending the heirs into possession. This had been done in this case at the time the sale was made for effecting the partition. Very true, the judgment putting the heirs in possession and that ordering the licitation were rendered at the same time — written, in fact, on the same sheet of paper — but the latter judgment was necessarily to come into effect and have operation only after the former had had full operation; for the licitation was not being ordered at the suit of a representative of the sue- *1037 cession but at that of the heirs themselves' as co-owners.
In Freret v. Freret, 31 La. Ann. 506, this court said:
“A succession is terminated when all the debts appearing to have been paid by a final account of its administrator duly homologated, the heirs shall have been put in possession of the hereditary effects by a judgment of court.”
In Levy v. Hitsche, 40 La. Ann. 505, 4 South. 474, this court said:
“It has been frequently decided that, in case a succession has been fully administered by a testamentary executor, tutor, curator, or administrator, and the heirs all of whom are majors, have come into the possession of the residuum, as an inheritance, or the same has been' unconditionally accepted by them, the probate jurisdiction over the property ceases, and the eoproprietorship of such heirs supervenes.”
[9] What must be the conclusion in the present case, upon these facts and under application of these principles, is very clear. The succession owed no debts; the heirs were all either of age or emancipated; they accepted the succession unconditionally; the appointment of an administrator would'have been a nullity, since there were no debts; the appointment of a dative testamentary executor would have been entirely useless, since there would have been nothing for him to do; from the time of the death of Mrs. Schadwell the property • was in the actual possession of the heirs, and this actual possession ripened into legal possession as the immediate legal effect of the order of court which sent the heirs into possession; from that moment the property was not succession property, but was the property of these heirs and in their complete possession; by ' a sale of succession property is meant a sale of property belonging to or depending upon a succession, and, we may add, made at the instance of the representative of a succession — an administrator or executor — and the said property did not so belong and was not so depending, and the successions of Mr. and Mrs. Schadwell had no such representative, but the sale in question was made at the instance of the coproprietors. It was therefore not a sale of succession property, but was an ordinary judicial sale, within the meaning of said Act 130 of 1914.
The judgment appealed from, which held differently, must therefore be reversed.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside; that the opposition of Matthews Bros., auctioneers, be sustained, and that the report or procSs verbal of the notary charged with making the partition herein be amended so as to allow to the said Matthews Bros., auctioneers, in the partition herein, the sum of $405.37, being 2y2 per cent, on the amount of each adjudication made by" them in the sale heretofore- made for effecting a partition herein; and that the costs of the said opposition, including those of the present appeal, be paid out of the fund to be partitioned.
See dissenting opinion of O’NIELL, J„ 88 South. 300.