*475
 
 HAMITER, Justice.
 

 Defendant, Mrs. Rose Milazzo Saladino, is appealing from a judgment which recognized her and the four plaintiffs (John Mil-azzo, Mrs. Jennie Milazzo Cardaro, Mrs. Catherine Milazzo Maniglia and Mrs. Annie Milazzo Sullivan) to be the sole heirs of their deceased parents, Niccolo Milazzo and Mrs. Frances Scardino Milazzo, each entitled as such to an undivided one-fifth of the estates of decedents; which decreed a partition by licitation of the properties of the successions;, and which ordered the defendant to collate to the succession of the mother the sum of $3,000 by taking less in the settlement thereof. Appellant’s complaint concerns primarily the collation order.
 

 On January 20, 1943, plaintiffs opened the mentioned successions by applying for the appointment of John Milazzo as administrator. The petition alleged that the parents died intestate, the father on February 26, 1936, and the mother on August 4, 1942, and that there were debts due by the estates. The application was dismissed, the court having concluded on a hearing of an opposition tendered by defendant that an administration was unnecessary.
 

 Subsequently, and in the same proceeding, plaintiffs filed another petition seeking a partition of the properties of the two successions and demanding collation by defendant in the sum of $3,000. Therein, it was alleged that the plaintiffs and the defendant were co-owners in indivisión of the properties. Following defendant’s filing of certain exceptions, particularly exceptions of no right and no cause of action, this petition was dismissed as of voluntary non-suit.
 

 In a later petition, filed in the same proceeding, plaintiffs made similar demands but alleged that they and defendant were co-heirs (not co-owners) in indivisión. The allegations of this petition were ultimately placed at issue through an answer tendered by defendant, and, after trial, the court rendered the judgment from which the instant appeal was taken.
 

 At the outset appellant (defendant) urges, under an exception filed in limine and overruled, that Division “D” of the Civil District Court of Orleans Parish was without jurisdiction to entertain the last petition, presented by plaintiffs. It is argued that such petition should not have been filed in and as a part of the original proceeding (allotted to Division “D”), because it represented a new action which, under the rules of the district court, should have been given a new number and regularly allotted. Since the last petition contained demands for a partition of the successions’ properties and for collation by one of the heirs, the filing of it in the original proceeding in which the successions were opened
 
 seems
 
 proper. Whether the rules of the district court provide otherwise we are unable to determine; those rules are not a part of the record before us and we can not take judicial notice of
 
 *477
 
 them. Bowman v. Flowers, 2 Mart., N.S., 267; Herring v. Price (La. Court of Appeal, Second Circuit), 169 So. 349.
 

 On the merits of the case all of the litigants agree that the properties left by decedents should be sold to effect a partition. The dispute concerns only appellees’ demand that appellant collate to the mother’s succession the sum of $3,000.
 

 In resisting this demand appellant insists (1) that the five litigants are co-owners (not co-heirs) in indivisión and consequently, under our jurisprudence, collation cannot be compelled; and (2) that she did not receive from the mother the sum of $3,000 for which collation is demanded.
 

 As a basis for the first proposition appellant’s counsel invokes the well settled doctrine that collation cannot be exacted in partitions among co-owners. Mitcham et al. v. Mitcham et al., 186 La. 641, 173 So. 132; Prichard v. McCranie, 160 La. 605, 107 So. 461; Duffourc v. Duffourc, 154 La. 174, 97 So. 391. Then he directs attention to the allegation made by plaintiffs in their voluntarily non-suited petition that they and the defendant are co-owners in -indivisión of the properties; and he argues, to quote from his brief, that “Any admissions they may have made in this first suit were binding on them and could not be withdrawn to the prejudice of the defendant.” The withdrawn allegation was merely a conclusion of law which in no manner prejudiced the rights of this defendant. And, being non-prejudicial, it could not and did not serve to estop plaintiffs in assuming their present position that the litigants a-re co-heirs. Janney v. Calmes et al., 212 La. 756, 33 So.2d 510, and cases therein cited.
 

 Again, defense counsel shows that the parties admittedly divided the furniture and other movable effects of the successions and that they also signed an agreement to sell all of the real estate thereof (obviously the sale was not consummated); and he contends that these were acts which could only be exercised by co-owners and constituted the tacit acceptance contemplated by Revised Civil Code Article 988, reading:
 

 “The simple acceptance may be either express or tacit.
 

 * * * * * #
 

 “It is tacit, when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir.”
 

 The mentioned acts of the litigants, unquestionably, amounted to a tacit and unconditional acceptance of the successions, and in one sense of the word the acceptance was performed by them in the capacity of owners. As a matter of fact, under the fiction of law well known as le mort saisit le vif, they became owners immediately on the deaths of the decedents. Revised Civil Code Article 940, Succession of Blumberg, 148 La. 1030, 88 So. 297. But
 
 *479
 
 the unconditional acceptance of the instant successions alone could not affect appellees’ rights to demand collation by appellant. As said in Revised Civil Code Article 1228:
 

 “Children or grandchildren, coming to the succession of the'ir fathers, mothers or other ascendants, must collate what they have received from them by donation inter vivos, directly or indirectly, and they can not claim the legacies made to them by such ascendants unless the donations and legacies have been made to them expressly as an advantage over their co-heirs, and besides their portion.
 

 “This rule takes place whether the children or their descendants succeed to their ascendants as legal or as testamentary heirs, and whether they have accepted the succession unconditionally, or with the benefit of inventory.”
 

 Until the heirs are sent and put into possession as owners by a judgment of court, which effects a closing of the succession, they are to be treated as co-heirs and governed by the rules of law relating to the settlement of estates, including the matter of collation. Caraway v. Hebert (La. Court of Appeal, First Circuit), 182 So. 164, Montz v. Montz (La. Court of Appeal, Orleans Circuit), 2 So.2d 251, Fabacher v. Fabacher, 214 La. 940, 39 So.2d 426. When the succession is thus closed the heirs are deemed co-owners or co-proprietors of the property theretofore belonging to the succession, just as if they had acquired it jointly by purchase. They then come within the contemplation of the doctrine (enunciated by the cases cited and relied on by defense counsel, in each of which the heirs had been sent into possession under a formal judgment) that collation cannot be exacted in partitions among co-owners. Doll v. Doll, 206 La. 550, 19 So.2d 249. The parties in the instant case have not been placed judicially in possession of the estates of. their parents; hence, a demand for collation is. authorized.
 

 Collation is the returning to the estate of a deceased person any gifts or advances which any of the descendant heirs may have received by donation or otherwise during the lifetime of the decedent. The obligation to collate is founded upon the equality which must be maintained among the lawful decedents who divide the succession of their ancestor. Revised Civil Code Articles 1228 and 1229; Doll v. Doll, supra. The heir should collate that which he has wrongfully taken from the ancestor, the same as that which he received as a gift or an advance. Succession of Couder, 46 La.Ann. 265, 14 So. 907.
 

 With these principles in mind we approach the remaining question (one of fact) of whether appellant obtained from the mother the sum of $3,000 for which collation is demanded.
 

 It appears that on August 3, 1942, while the mother was desperately ill at the French Hospital in New Orleans (she died the next day), John Milazzo and Mrs. Jennie Cardaro (two of the plaintiffs) and the
 
 *481
 
 defendant surrendered certain homestead stock certificates owned by their mother (in accordance with instructions previously given them) to the Commonwealth Homestead Association, and they received therefor a check, payable to the mother, in the amount of $3,505.55. Immediately thereafter they cashed the check at the National Bank of Commerce of New Orleans, Mrs. Cardaro and the defendant having signed their names on the reverse side of the check beneath an X mark which was substituted for the mother’s signature. Then the three journeyed in John Milazzo’s automobile to the Treme Branch of the National Bank of Commerce located at the corner of North Claiborne Avenue and St. Ann Street (in the vicinity of the homes of plaintiffs and the mother) where a safety deposit box was rented in the name of the defendant.
 

 The above recited facts are not disputed. But as to what ultimately became of the obtained proceeds, particularly $3,000 thereof for which collation is demanded, there is a hopeless and irreconcilable conflict in the evidence offered by plaintiffs on the one hand and by defendant on the other.
 

 The testimony of John Milazzo and Mrs. Cardaro is to the effect that after arriving at the Treme Branch, arranging for the bank box, and paying the rental out of the odd $5.55 of the check’s proceeds, the three of them, accompanied by the official in charge, repaired to that box and deposited therein the $3,500, consisting of large bank notes and contained in an envelope. Those plaintiffs, as well as plaintiff Mrs. Maniglia, further testified that three or four days after the mother’s death all of the children except Mrs. Sullivan (who was then ill in the hospital) assembled at the home of the mother to count the money contained in the latter’s purse. On the completion of this task Mrs. Cardaro listed on the back of an envelope the sum found, less an amount deducted for payment of certain current debts of the mother; also she wrote thereon “In Bank Box 3500.00, out 500.00, Bal. in Box 3000.00.” Then, beneath those notations, the signatures of the assembled four, including that of the defendant, were affixed. The balance from the purse plus the mentioned $500, explained the plaintiffs, was to be rrsed in paying funeral expenses ; and the attested memorandum (produced and placed in evidence during the trial) was prepared for the benefit of the ill sister, Mrs. Sullivan.
 

 Some few days later, those witnesses further testified, the defendant delivered to Mrs. Maniglia $500 in bank notes; and with it and the purse balance she on August 16, 1942, paid the mother’s funeral bill.
 

 The testimony of the defendant is that on reaching the Treme Branch of the National Bank of Commerce she personally rented and paid for the safety box and, while John Milazzo and Mrs. Cardaro waited in the bank lobby, she went to the box with the bank official and placed therein $1,200,
 
 *483
 
 contained in an envelope and which was her individual funds. She denied emphatically that the $3,500, obtained that day by the three from the homestead stock surrender, was deposited in that box as her companions assert. The $1,200, she insisted, was left by her first husband who died in 1921, and since his death it had been kept most of the time at her home. Expecting to be absent for several days because of the mother’s serious illness and being afraid that her house might burn, she decided to place the money in a safety box. Challenging the truthfulness of this testimony, plaintiffs’ counsel show that the bank in question is located in the downtown section of New Orleans, several miles from defendant’s home which is on Toledano Street in the uptown section; and -they suggest that if defendant had such funds to safeguard the renting of a box in a bank nearer her home would have more conveniently served her purpose.
 

 Defendant admitted that she was present when the money in the mother’s purse was counted and that she signed the memorandum prepared by Mrs. Cardaro. But she does not agree that it contained at that time a notation showing $3,500 to be in the bank box. She directs attention, in this connection, to the fact that the word “Box” is interlined diagonally in both places on the memorandum, and she urges that a subsequent alteration occurred. Mrs. Car-daro, however, stated (and the other plaintiffs present corroborated her testimony) that the interlineation took place before the signatures were affixed.
 

 Defendant also vigorously denied having delivered $500 to Mrs. Maniglia to be used in paying the funeral bill. But Mrs. Sullivan (in corroboration of the testimony of the other plaintiffs) testified that defendant, while visiting in her home after her return from the hospital, admitted having made the delivery to Mrs. Maniglia of the $500 and that it was a part of the original $3,500 obtained from the homestead stock. Too, a colored woman, offered as a witness for plaintiffs, told of being in Mrs. Sullivan’s home during a visit there by defendant and of having heard the latter state that the money was in her name.
 

 For correctly determining an issue of fact such as the instant one, where there exists a glaring irreconcilable conflict in the testimony, it is necessary to pass upon primarily the question of the veracity of the witnesses. To do that the trial judge occupies a much better position than does an appellate court, for he has the opportunity of hearing the witnesses and of observing their demeanor when testifying. And that more advantageous position is the reason for the well recognized doctrine that where the credibility of witnesses is involved the finding of fact of the trial judge must be given great weight and should not be disturbed unless manifestly erroneous.
 

 Applying this doctrine, which is clearly appropriate here, we are unable to con-
 
 *485
 
 elude that manifest error attends the finding that the defendant received the $3,000 in question. Accordingly, as was correctly held, she must collate that amount to her mother’s succession.
 

 The judgment is affirmed.
 

 O’NIELL, C. J., takes no part.