524 So.2d 883 (1988)
Kenneth M. BLUE, et al., Plaintiffs-Appellees,
v.
COASTAL CLUB, INC. & Sheldon S. Blue, Defendant-Appellant.
No. 86-1224.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Writ Denied March 25, 1988.
James H. Thornton, Leonard L. Lockard, Shreveport, for plaintiffs-appellees.
Logan & Sallinger (William E. Logan, Jr.), Lafayette, Provosty, Sadler & Delaunay (Richard B. Sadler), Alexandria, for defendant-appellant.
Before LABORDE and KNOLL, JJ., and CULPEPPER, Judge, Pro Tem.[*]
KNOLL, Judge.
In this action for declaratory judgment Sheldon S. Blue appeals the trial court's decision which held that he was not the sole owner of one share of stock in Coastal Club, Inc. (hereafter Coastal Club). The trial court ruled that Daniel D. Blue, Sheldon's father, did not donate the share of stock to him, that Sheldon held the stock for the benefit of himself and his siblings and that Sheldon's actions regarding this share for almost twenty years estopped *884 him from asserting sole ownership. Sheldon contends the trial court erred in: 1) recognizing that Sheldon's siblings held an undivided interest in the Coastal Club stock with him; 2) allowing Sheldon's siblings to collate in kind; and 3) failing to sustain Coastal Club's peremptory exceptions of no cause and no right of action. Since Sheldon Blue failed to brief assignment number three, it is considered abandoned. Courts of Appeal, Rule 2-12.4. For the following reasons, we affirm.

FACTS
Daniel D. Blue and Myrtle McMillion Blue were married in Lafayette and had eight children.
On December 12, 1928, Daniel purchased a share in Coastal Club, Inc., an organization established for hunting and fishing enthusiasts. The stock certificate could be issued in only one name and only males could own the stock. Guests were not permitted unless accompanied by the named shareholder.
In July 1936 Mrs. Blue died and her succession was opened. The single share of Coastal Club stock was inventoried with the succession assets and valued at $100.
On November 19, 1943, Daniel D. Blue, who was unable to continue hunting and fishing due to infirmities of old age, wrote Coastal Club, Inc. stating in pertinent part:
"Referring to our telephone conversation this p.m. I am enclosing stock certificate receipt for one share No. 6 in Coastal Club, Inc. in my name which I hereby donate to my son, Sheldon S. Blue, and this is authority for you to make transfer on your books accordingly."
Sheldon was employed by Daniel in the family's laundry business and was able to accompany the Blue's guests on hunting and fishing trips. Coastal Club cancelled Daniel's original certificate and noted a new certificate in Sheldon's name. There is no record evidence of whether the new certificate was ever delivered to Sheldon.
Daniel Blue died on September 1, 1954. His sons, Sheldon and Daniel Calvin Blue, were appointed co-executors of the estate.
The inventory, signed by both executors, contained the following item:
"Lot No. 5.
One (1) share of stock in Coastal Club, Inc. of DeRidder, Louisiana, representing membership in said club, the beneficial interest in said share belonging to D.D. Blue."
Between 1954 and 1982 Sheldon Blue performed certain managerial functions on behalf of the Estate of Daniel Blue, including the disbursement of revenues derived from mineral activity on the Coastal Club property, allocation of opportunities to hunt and fish on the Coastal Club lands, and apportionment of the property taxes each Blue heir owed on succession real estate.

STOCK OWNERSHIP
Sheldon Blue contends that since his name was placed on the stock certificate, pursuant to the Uniform Stock Transfer Act, the stock was his as sole owner at the time of the death of his father, Daniel D. Blue, and was erroneously inventoried in his father's succession.
Generally speaking, shares of stock are incorporeal movable property which fall within the statute requiring a notarial act if donated. LSA-C.C. Arts. 461, 473 and 1536; Primeaux v. Libersat, 322 So.2d 147 (La.1975). Nonetheless, if stock is transferred in compliance with the Uniform Stock Transfer Act, LSA-R.S. 12:621, et seq. (Repealed), no notarial act is required to validate a donation of stock. Primeaux, supra. However, even in a case where compliance with the stock transfer legislation may substitute for the codal formalities of a donation, the substantive requirements of a divestment and donative intent must be fulfilled in order to effect a valid donation. Broussard v. Broussard, 340 So.2d 1309 (La.1976).
From the outset we note that Sheldon asserts sole ownership of the stock certificate by virtue of Daniel's letter of November 19, 1943, to Coastal Club transferring the stock in question. This reliance overlooks the Succession of Myrtle Blue, his mother, which was opened many years prior to Daniel's letter. From that succession *885 it is clear that the share of stock was community property which, upon the death of Myrtle Blue, devolved one-half to Daniel, the surviving spouse, and one-half to her eight children subject to Daniel's usufruct.[1] Accordingly, the only interest which Daniel could have transferred was a one-half interest in the stock certificate. We shall then address whether Daniel donated his one-half interest to Sheldon.
Sheldon incorrectly argues that compliance with the stock transfer act is sufficient. Nowhere does he address the question of Daniel's intent to vest ownership of his one-half interest with Sheldon. Sheldon must show a divestment and donative intent to effect a valid donation. See Broussard, supra. The testimony of Daniel Calvin Blue, Kenneth M. Blue and Daniel D. Blue, Jr. establish that the transfer of stock was one of convenience since Daniel could no longer hunt and fish, and under the corporation's rules the named shareholder was required to accompany guests.
Moreover, Sheldon's actions overwhelmingly confirm that he regarded the stock as belonging to his father's estate. First, he placed the share of stock in the inventory of his father's succession. Then for years Sheldon managed the estate and communicated by letter with his siblings. He assessed each brother and sister their pro rata share for Coastal Club membership dues, distributed Coastal Club dividends, apprised them on the Internal Revenue's treatment of Coastal Club membership, shared hunting reservations and presented regular accounts of his managerial actions on their behalf. Most importantly, however, was a series of letters in which he made repeated efforts to purchase his siblings' share of ownership in the Coastal Club. These efforts culminated in his purchase of one of his sister's shares for $500 and clearly indicate that he did not view himself as the sole owner of the Coastal Club share. And lastly, the record clearly shows that Sheldon did not take the position that his father donated the stock to him until after he had a dispute with his brother, Kenneth Blue, in 1981 concerning hunting at Coastal Club.
After a careful review, we find the record fully supports the trial court's conclusion that Daniel D. Blue lacked a donative intent.

COLLATION Sheldon next argues that the effect of the trial court's judgment is to make him collate the stock in kind.
The rules of collation are applicable only when a donation has been made. LSA-C.C. Arts. 1283, 1252. There is no donation in the case sub judice because of Sheldon's failure to establish any donative intent in Daniel's transfer of the stock; therefore this argument likewise falls because there can be no collation without a donation.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Sheldon S. Blue.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge pro Tempore.
[1] The record does not contain a judgment of possession, even though a succession was opened. An inventory of record clearly lists the stock. Until the heirs are sent and put into possession as owners by a judgment of court, which effects a closing of the succession the heirs are treated as co-heirs. Successions of Scardino, 215 La. 472, 40 So.2d 923 (1949). Therefore, the absence of a judgment of possession has no practical effect on this issue.