REGAN, Judge.
Plaintiff, Frank J. Walker, instituted this suit against the defendants, Supreme Industrial Life Insurance Company and William J. Huntley, endeavoring to obtain a judgment which would order that twelve and a fraction shares of stock in the above company, presently appearing in the name of Huntley, be reissued in the plaintiff’s name. Plaintiff explained that the shares were never actually owned by Huntley, but were placed in his name for convenience only, and that the defendant corporation had acted wrongfully in refusing to reissue the shares.
Prior to the trial hereof, plaintiff died and his widow was substituted for him as party plaintiff.
The defendant, Supreme Industrial Life Insurance Company, answered and therein denied the foregoing allegations and asserted as a defense that it is prohibited from transferring and reissuing the shares, since its charter requires that a shareholder must initially offer his stock to all other shareholders in the company before he can sell them to anyone.
The defendant, Huntley, then answered and insisted that ten of the shares in question were donated to him by Frank J. Walker in consideration of Huntley’s acceptance of a position with the company so as to supervise Walker’s interests therein. Pie further asserted that he sold two and a fraction shares out of the twelve and a fraction to Walker without realizing that the corporate charter restricted the sale of its stock.
The lower court rendered judgment in favor of the defendants, and the plaintiff has, therefore, prosecuted this appeal.
The record reveals that the Supreme Industrial Life Insurance Company was organized in the year 1941 by Raleigh J. Coker, Frank J. Walker, Lucien V. Alexis, Sr., Paul Hortman, Gustave C. Chapital, Jr., and Horace Rixner. However, these six men were subsequently informed by the state insurance examiner that an industrial life insurance company must have at least fifteen shareholders. Thereupon, each of *247 the original six shareholders brought in two other persons to share their stock- holding, and thus the corporation was legally launched with 166^3 shares vested in each group as follows:
1. Lucien V. Alexis placed shares in the names of his wife and his son.
2. Horace Rixner placed shares in the names of his wife and his father.
3. Paul Hortman placed shares in the names of his wife and his mother-in-law.
4. Raleigh J. Coker placed shares in the names of his wife and his foster daughter.
5. Gustave C. Chapital, Jr., placed shares in the names of his wife and brother.
■6. Frank Walker placed shares in the name of his wife, and since he had no children, he requested Huntley[1] to take ten shares in his name.
In 1944 the Rixner and Hortman groups •offered their stock for sale, and after extended litigation their shares were equally •divided among the four remaining groups.[2]
In this case, Walker contends that Huntley was not the actual owner of the shares involved in this dispute, but instead retained them for his benefit in order to comply with the legal requirements applicable to industrial life insurance companies.
We emphasize at the inception of our opinion that the judicial function of the trial court, and of this court, was rendered considerably more difficult by virtue of the death of the plaintiff before the trial of this suit. Since he was opposed in interest to the remainder of the shareholders, he was the only one who could testify authoritatively, insofar as he was concerned, as to the exact nature of the transactions which form the subject matter of this litigation.
In any event, the crux of the plaintiff’s case lies in his contention that Huntley was not the true owner of the shares involved herein, but rather a mere nominee. If this is so, he is entitled to have the contested shares reissued in his name, in conformity with the rationale emanating from Cabral v. Strudwick Funeral Home[3] and Blum v. Latter.[4] The rationale of the foregoing cases is to the effect that the restrictive transfer provisions contained in a corporate charter have no application to the transfer of shares from a nominal holder to the true owner thereof, when the corporation knows that the person to whom the shares were issued was not the true owner.
Plaintiff’s counsel, through the appropriate use of cross-examination and the marshalling of all documentary evidence at his disposal, revealed certain facts which proved with that certainty required by law that Walker was the actual owner of the stock. It was established as a fact that each of the six original shareholders “brought in” two other persons to qualify them as shareholders. It was indeed recognized without dispute by this court, in the year of 1948, in the case of Chapital v. Walker,[5] that the individuals brought in to the company as shareholders were mere nominees of the six original shareholders, and that the only reason they were permitted to acquire stock in their respective names was to comply with the requirements of our statutory law.
Moreover, when the Hortman and Rixner stock was offered to all of the shareholders in conformity with the charter, Huntley was offered none of this stock by the officers of the corporation, since they very obviously recognized his status. If he had been the sole owner of the shares, the company would have been forced to permit him to buy his proportionate amount of the stock so offered.
*248 In addition, it is undisputed as a fact that Huntley endorsed the stock certificate representing the ownership of ten shares and delivered it to Walker shortly after the corporation was organized. Moreover, the certificate for two and a fraction shares also was endorsed and delivered to Walker, and, significantly, Walker has always had possession of the twelve and a fraction shares of the stocks, and it now forms part of his estate. Huntley laboriously insisted that he had bought these shares in his own right and later sold them to Walker of his own volition. However, plaintiff’s counsel produced a cancelled check from Walker to Huntley in the amount of $39.69, dated August 16, 1961, which Huntley deposited in the bank on August 23, 1961. This, together with a subsequent payment to Huntley of a small amount in addition to the $39.69, convinces us that Walker advanced the money to Huntley to buy the stock, which was not issued until September 8, 1961.
Finally, it was established as a fact that on numerous occasions Walker made contributions to[1] the capital of the corporation in order to comply with an edict of the Insurance Commissioner, who ordered the company to either strenghten its capital structure or cease and desist from doing business. The checks and records introduced into evidence by the plaintiff clearly reveal that Walker contributed an amount equal to of the needed capital. If Huntley had been the true owner of the stock, Walker’s share of the capital contribution would have been somewhat less than the Y, which he actually contributed. Moreover, not a scintilla of evidence exists to the effect that Huntley made any contribution to the capital of the corporation.
A review of the defendants’ evidence reveals simple negation, that is, either a total denial or a studied lack of knowledge by the other shareholders of any of the foregoing facts. This, of course, is to be anticipated in cases of this sort. However, the very nature of the judicial process requires that we not only listen to the proffered evidence, but thereafter we are required to ascertain the reasonable probabilities emanating from the facts established by both the oral and the documentary-evidence. The law, like our branches of the social sciences, which are inexact, must be satisfied to test the validity of its conclusions by the logic of probabilities rather than the logic of mathemathical certainty, since it is conceded that a civil case need not be proved beyond a reasonable doubt.[6]
With this in mind, and from a. careful evaluation of the aforementioned", evidence, it is our opinion that the plaintiff" has borne the burden of proving that Huntley was his mere nominee. Any other-conclusion that we might reach would be-a departure from all common sense and', experience.
For the foregoing reasons, the judgment of the district court is reversed, and. judgment is hereby rendered in favor of' plaintiff ordering the Supreme Industrial Life Insurance Company to transfer 12 and! 76729/4373553 shares of stock represented, by certificates numbered 17 and 72 respectively, to the name of Mrs. Anna Willis,, widow of Frank J. Walker, on the appropriate books of said corporation, and that a new certificate be issued in the name of said plaintiff for 12 and 76729/4373553-shares, in conformity with the existing law.
Defendants are to pay all costs of this, proceeding, including the costs of this appeal.
Reversed and rendered.

. Huntley became a part-time employee of the corporation.

. See Chapital v. Walker, 35 So.2d 900, 901 (1948).

. La.App., 4 So.2d 760 (1941).

. La.App., 163 So.2d 189 (1964).

. La.App., 35 So.2d 900, 901 (1948).

. Ellzey v. Fidelity & Casualty Company of New York, La.App., 123 So.2d 593 (1960)..