595 So.2d 739 (1992)
Jeanette Lentini ACKEL, Individually and as Administratrix of the Succession of George J. Ackel, Sr., Thad Ackel, and GJA, Inc.
v.
George J. ACKEL, Jr.
No. 91-CA-568.
Court of Appeal of Louisiana, Fifth Circuit.
February 18, 1992.
*740 William J. Dutel, New Orleans, for plaintiffs/appellants Jeanette Lentinti Ackel, individually and as administratrix of the succession of George J. Ackel, Sr., and GJA, Inc.
James D. Carriere, New Orleans, for plaintiff/appellant Thad Ackel.
Robert Creely, Gretna, for defendant/appellee George J. Ackel, Jr.
Before KLIEBERT, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Appellants, Jeanette Ackel, individually and as administratrix of the Succession of George Ackel, Sr., Thad Ackel and GJA, Inc. filed a Petition for Writ of Quo Warranto and for Injunctive Relief against appellee, George Ackel, Jr., in a dispute over the ownership of GJA, Inc. The trial court rendered judgment in favor of appellee. We reverse.
On April 3, 1987 George Ackel, Sr., now deceased, and appellee formed GJA, Inc. to operate a drugstore located on property owned by George Ackel, Sr. and his wife, Jeanette Ackel. George Ackel, Sr. had been a principal in DPJ, Inc., owner and operator of a predecessor drug store, which defaulted in its rent and closed. In an agreement with George Ackel, Sr., DPJ, Inc. turned over its assets to him and its indebtedness was forgiven. The value of the assets of DPJ, Inc. was $263,319.00. This became paid-in capital of the new corporation, GJA, Inc. George Ackel, Sr. was required to maintain a drugstore at that location by agreement with another tenant, Winn-Dixie. The articles of incorporation of GJA, Inc. authorized 1000 shares of stock, but no stock was initially issued.
George Ackel, Sr. was secretary-treasurer of GJA, Inc. In April, 1987 he filed an application for subchapter S status with the Internal Revenue Service and his personal tax returns thereafter reflected losses from the corporation. In September and November, 1987 he placed ads in the Times-Picayne newspaper with a declaration that he, as owner, was responsible for the corporate debts. He applied for an employer identification number and performed administrative services for the corporation. His 1987 federal income tax return listed loans of $287,000.00 to the corporation. He visited the drugstore on a regular basis.
Appellee was the incorporator and president of GJA, Inc. He made no financial contributions to the corporation. He managed the drugstore. He applied for the permits and licenses that were required to operate a pharmacy and they were issued to him. He was listed as owner on those forms. In December, 1987 one certificate of stock of GJA, Inc., signed by appellee as president, was issued for 1000 shares in the name of appellee. Tax returns for GJA, Inc., showing George Ackel, Sr. as owner, were signed by appellee. He did not change the subchapter S status of the corporation after receiving the stock certificate in his name.
*741 On April 19, 1988, George Ackel, Sr. died and Jeanette Ackel was appointed administratrix of the succession. Thad Ackel returned from California to help, following his father's death. Ultimately, a dispute arose between appellee and his mother and brother when appellee claimed ownership of GJA, Inc. Prior to the dispute, two checks were issued by the estate to GJA, Inc. as loans to the corporation in the amount of $75,000.00.
Appellants called and held a shareholder's meeting, with Jeanette Ackel as the sole shareholder. She and Thad Ackel were elected to the Board of Directors and appellee was removed as a director. Thad Ackel was elected President and Jeanette Ackel was elected secretary-treasurer.
Appellee blocked attempts by appellants to take control of the drugstore and eventually a Petition for a Writ of Quo Warranto and for Injunctive Relief was filed by appellants to determine the right of the appellee to act on behalf of GJA, Inc. A judge trial was held on April 8 and 9, 1991. The trial judge rendered a judgment on April 9, 1991 and signed it on April 15, 1991 in favor of appellee. He found that appellee had borne his burden of proof, that he was owner of all of the corporate stock and that he had all legal rights to the office of president and to his membership on the Board of Directors.
Appellants contend that the trial judge erroneously relied on appellee's possession of the certificate of stock in his name to determine that he owned the corporation. They assert that the law and the facts support the finding that George Ackel, Sr. owned the stock. Thus, at his death, the corporation became part of his estate. The appellants assert that the certificate of stock issued to appellee is defective because it was only signed by the President (appellee) and not by the secretary (George Ackel, Sr.) as well, as required by La.R.S. 12:57(A). Further, they assert that George Ackel, Sr. did not donate the stock to appellee because he did not follow the required donation formalities.
LSA CCP art. 3901 provides that a writ of quo warranto is directed to an individual to show by what authority he claims or holds office in a corporation. Its purpose is to prevent usurpation of corporate office or powers.
A stock certificate is prima facie evidence of corporate ownership, but is distinguished from actual ownership, which may be determined from all the facts and circumstance of the case. International Stevedores, Inc. v. Hanlon, 499 So.2d 1183 (La.App. 5th Cir.1986). It is only paper evidence of the ownership of shares of stock created for convenience. It is not the certificate which is the subject of ownership, but the share of stock itself. Id.
La.R.S. 12:57 requires a certificate of stock to be signed by the president and secretary or by any other officer provided by the articles or by-laws. Consequently, for the stock certificate to constitute prima facie evidence, it must be confected properly. (See: La.R.S. 12:1(F) A "Certificate of stock" means a properly executed instrument...). Herein, there were no by-laws and the articles do not call for other signatures. Thus, two signatures, one of the president and one of the secretary, are required for the stock certificate to be properly executed. Therefore, since the certificate was not confected properly, it is not prima facie proof of ownership of the corporation, and we look to all the facts and circumstances.
The evidence at trial showed that George Ackel, Sr., formed GJA, Inc. specifically to continue the operations of the prior drugstore, in which he was a part owner. He contributed the inventory and represented to the local newspaper, the IRS, his CPA, his wife and other son that he was the owner. He received the tax benefits through his election of sub-chapter S status. He was in total control of the extensive assets owned by himself and his wife. He kept a tight grip on his business affairs and his wife, sons and CPA followed his directions. Until December, 1987 when the stock certificate was issued in the name of appellee, George Ackel, Sr. vested himself with the indicia of ownership of the corporation, even though no shares of stock had been issued. He did the innumerable things that the owner of a corporation *742 would do. Appellee did one or two things that an owner would do. He managed the drugstore and placed his name on permits. Therefore, we find that George Ackel, Sr. owned GJA, Inc. from its incorporation through December, 1987. Fireplace Shop v. Fireplace Shop of Lafayette, 400 So.2d 702 (La.App. 1st Cir. 1981).
George Ackel, Sr. decided in December, 1987 to have the corporation issue stock to appellee. That is supported by the testimony of the appellee and the attorney, Robert Creely, who prepared the instrument. Creely was contacted by George Ackel, Sr. on a Saturday to meet with him and appellee to issue a stock certificate in the name of the appellee. It is significant that George Ackel, Sr., not appellee, set up the meeting.
Appellee paid no consideration for the issuance of the stock certificate, so it was not a sale. The question is whether the action was a donation, and if so, whether it is valid under Louisiana Law.
LSA CC art. 1523 provides for three types of donations in Louisiana, 1) gratuitousmade without condition and merely from liberality, 2) onerousmade with conditions or charge on the donee, and 3) remunerativeto compensate for services rendered. We find no evidence that the issuance and transfer was made to appellee with charges or conditions, or that it was to compensate for services rendered. Therefore, it was not onerous or remunerative. Gratuitous is a possibility. A stock certificate is incorporeal movable property. LSA CC arts. 461; 473. Normally, gratuitous donations of incorporeal things are valid only if executed before a notary and two witness. LSA CC art. 1536. The donation of stock, falls within that provision. Blue v. Coastal Club, Inc., 524 So.2d 883 (La. App. 3rd Cir.1988), writ denied 525 So.2d 1044 (La.1988). This was not done herein.
When stock is transferred in compliance with the Uniform Stock Transfer Act, no notarial act is required to validate the donation. Id; Succession of Payne v. Pigott, 459 So.2d 1231 (La.App. 1st Cir. 1984). Since the stock transfer legislation is intended to protect third-parties dealing with the apparent owner of a stock, a court may look to the intent of the parties to the transfer to see if there was a valid transfer of ownership between them. Id. But, even when the stock transfer legislation applies as to the form of the donation, the codal substantive requirements of a divestment, and donative intent, must be fulfilled in order to effect a valid donation. Blue v. Coastal Club, Inc., supra.
La.R.S. 10:8-307 states that a purchaser who receives a certificated security (by definition in LSA RS 10-8-102, shares of stock) in registered form without a necessary endorsement is entitled to have the endorsement supplied and, as between the transferor and transferee, the transfer is complete upon delivery. A purchaser includes one who takes by gift, R.S. 10:1-201.
"An endorsement of a certificated security in registered form is made when an appropriate person signs on it or on a separate document an assignment or transfer of the security or a power to assign or transfer it or his signature is written upon the back of the security." LSA RS 10:8-308. An "appropriate person" is one specified by the security or special endorsement to be entitled to the security (R.S. 10:8-308(6)), or a person having the power to sign under applicable law or controlling instrument. (R.S. 10:8-308(8)(e)).
In this case, we have found that George Ackel, Sr. was the initial owner. Thus, the endorsement provisions of R.S. 10:8-308 apply. Since George Ackel, Sr. did not sign any document or the stock certificate, the provisions of the statute are not met and, as to third-parties, the appellee is not a bonafide "purchaser" until he gets the endorsement. However, as between George Ackel, Sr. (now the estate), and appellee, the transfer was complete upon delivery and appellee may require an endorsement from the succession representative, LSA RS 10:8-308(8)(c). However, this conclusion does not dispose of the issue since other legal principles are involved.
Whatever George Ackel, Sr.'s intent, he was without the legal right to dispose of the corporation in favor of one child, to the detriment of the other heir. He could not donate the whole of a community property *743 asset without consent of his wife. The evidence herein shows that the corporation and its assets are community property. LSA CC art. 2338. While each spouse may manage, control or dispose of community property in the absence of other law, (CC art. 2346), the donation of community property requires concurrence of both spouses, except for customary gifts. LSA CC art. 2349. The concurrence of both spouses is also required to alienate "all or substantially all of a community enterprise". LSA CC art. 2347.
A spouse has the exclusive right to manage movables (stock) issued in his name, as provided by law (CC art. 2351). However, this transaction involved the attempted donation of the entire corporation and its assets. The alienation is thus relatively null (CC art. 2353) since Mrs. Ackel did not consent or renounce the right to concur. Thus, considering the Uniform Stock Transfer Act and the substantive requirements of divestment, donative intent, community property and successions law, we find that the corporation is an asset of the estate and is not owned by appellee.
Accordingly, the judgment of the trial judge is hereby reversed.
Costs of this appeal are to be paid by appellee.
REVERSED.