930 So.2d 348 (2006)
Jerry "Pete" MERCER, Plaintiff-Appellee
v.
Tommy MERCER, Defendant-Appellant.
No. 40,995-CA.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2006.
*350 Crawford & Joyce, by Jefferson B. Joyce, Monroe, for Appellant.
Cotton, Bolton, Hoychick & Doughty, by David P. Doughty, Rayville, for Appellee.
Before STEWART, DREW and LOLLEY, JJ.
STEWART, J.
Jerry Mercer filed suit against his brother and defendant herein, Tommy Mercer, to compel either the transfer of one hundred shares of Snake Ridge Partnership, Inc. (Snake Ridge) stock from Tommy to him individually or payment of an alleged indebtedness totaling $15,586.93. The trial court denied exceptions of prescription, no cause of action, and no right of action and rendered judgment in favor of the plaintiff, ordering Tommy to transfer the stock certificate to Jerry. Tommy appealed. For the following reasons, we affirm the judgment of the trial court.

FACTS
Snake Ridge was incorporated on February 20, 1990, with the intent of serving as the corporate owner of immovable property for members of the Hurricane Hunting Club to use for hunting purposes. At its inception, stock certificates were issued in the names of each shareholder, including stock certificate number six evidencing Tommy Mercer's ownership of 100 shares of stock. While none of the documents relating to the rules and regulations which govern membership in the Hurricane Hunting Club were submitted into evidence, the uncontroverted testimony presented at trial indicates that membership in the club was limited to shareholders in Snake Ridge.
Section 5.5 of the By-Laws for Snake Ridge Partnership restricts the transfer of the capital stock therein as follows:
A. If any stockholder decides to sell his stock prior to the mortgage indebtedness being satisfied in full, the sale must be to the remaining members. The price will be his pro-rata share of the original purchase price. After the mortgage has been retired, the sale must be to the remaining members at the appraised value.
B. In the event of the death of the shareholder, his heirs will receive his ownership interest. However, the heirs may only sell their interest to one of the other shareholders, as set forth above.
According to the evidence, Snake Ridge initially borrowed $22,000 for the purchase of land, and each shareholder was assessed his pro-rata share of the principal and interest on the loan. To make additional acquisitions, it would borrow more money and assess each shareholder his pro-rata share of the principal and interest incurred for the purchase of the land.
The evidence established that Tommy did not pay any of the principal or interest assessed to his shares as he was unable to afford same. Instead, Jerry, who also owned 100 shares of stock in Snake Ridge, paid the amounts assessed to the shares of *351 Tommy and another brother, Kenny, to ensure that his brothers and their sons would be able to hunt on the Snake Ridge property. Presumably because of this arrangement, Jerry was given the certificates evidencing Tommy's and Kenny's share of ownership when the certificates were initially issued.
It is unclear from the testimony whether the initial payments made by Jerry were intended as a loan or a gift. In 2000, Snake Ridge made another purchase of land for which each holder of 100 shares was assessed $8,341.05. Jerry testified that he told Tommy he would have to pay, but Tommy said he could not afford to do so. Tommy told Jerry that if he paid, the shares would be his. Though Tommy denied Jerry's version of events, the trial court found that when the brothers discussed the payment of the assessment in 2000, they agreed that if Jerry paid Tommy's share, Jerry could have Tommy's shares of stock. The evidence at trial reflects that on December 26, 2000, Jerry's wife Lorene issued a check out of their joint checking account for $16,682.10 made payable to Richland State Bank. The next day, a credit slip from Richland State Bank was completed reflecting a payment in the amount of $16,682.10 on a commercial loan owed by Snake Ridge.
However, while the stock certificates remained in Jerry's possession, Tommy never signed the certificate or any other instrument to evidence transfer of the shares to Jerry. Snake Ridge continued to acquire property. In December 2003, Jerry presented the stock certificate to Tommy and asked him to sign it over to him or to use it as security to borrow money to pay Jerry for the Snake Ridge assessments he had paid on his behalf. Tommy took the certificate and neither signed over his shares to Jerry, nor paid him for his share of the Snake Ridge expenses.
On January 4, 2005, Jerry filed suit against Tommy seeking specific performance pursuant to their December 2000 agreement for repayment of the assessments paid by Jerry on Tommy's behalf or transfer of the shares evidenced by certificate number six. Tommy responded by filing exceptions of prescription, no cause of action, and no right of action. Trial was held on June 20, 2005, after which the matter was taken under advisement. On July 14, 2005, the trial court issued reasons for judgment denying Tommy's exceptions and ordering that Tommy execute a transfer to Jerry of the shares of stock in Snake Ridge represented by stock certificate number six. A judgment to this effect was signed on August 5, 2005.
In this appeal, Tommy argues that the trial court erred in denying the exceptions of prescription, no right of action, and no cause of action.

DISCUSSION

Prescription
The trial judge, in overruling the plea of prescription, assumed that the applicable liberative prescriptive period was three years as provided in La. C.C. art. 3494 for actions on money lent. However, finding that Tommy had pledged his shares of stock to Jerry and/or acknowledged the debt on more than one occasion, the trial court concluded that the prescriptive period was interrupted until at least December of 2003, when Tommy took possession of the stock certificate from Jerry. Accordingly, the trial court concluded that Jerry's filing of the suit on January 4, 2005, was well within the three-year liberative prescriptive period.
While we find that the trial court's overruling of the exception of prescription was *352 not in error, we do so for different reasons. In its reasons for judgment, the trial court found that in December of 2000, Tommy and Jerry agreed that if Jerry paid Tommy's $8,341.05 assessment, Tommy would transfer his shares to Jerry. Therefore, a perfected contract of sale existed with the concurrence of three circumstances: the thing sold, the price and the consent. La. C.C. art. 2439.
The stock of the corporation was acquired by Jerry as soon as there was an agreement regarding the object and the price, and delivery of the stock certificate was unnecessary. A stock certificate is merely paper evidence of the ownership of the stock and is not in reality the subject of the ownership, to wit: the shares of stock. Succession of McGuire, 151 La. 514, 92 So. 40 (La.1922); Hartnett v. LGD Properties, Inc., 99-2540 (La.App. 4th Cir.5/03/00), 767 So.2d 88, writ denied, 2000-2626 (La.11/17/00), 774 So.2d 976; Dardeau v. Fontenot, 326 So.2d 521 (La. App. 3d Cir.1976). A stock certificate is prima facie evidence of corporate ownership, but it is to be distinguished from actual ownership which may be determined from all the facts and circumstances of a case. Fireplace Shop, Inc. v. Fireplace Shop of Lafayette, Inc., 400 So.2d 702 (La.App. 1st Cir.1981).
Accordingly, once a perfected contract of sale was entered into, Jerry had the right to demand and receive the certificate of stock evidencing that ownership or an action in damages if the certificate evidencing ownership of the shares could not be delivered. Finn v. Ponsaa, 308 So.2d 352 (La.App. 4th Cir.1975), writ denied, 313 So.2d 238 (La.1975); Good v. Breazeale, 148 So.2d 766 (La.App. 4th Cir. 1963), app. denied, 244 La. 141, 150 So.2d 766 (La.1963). The prescriptive period to be applied in such a case, however, is res nova. Statutes of prescription must be strictly construed. Guillot v. Guillot, 346 So.2d 813 (La.App. 1st Cir.1977), writ denied, 350 So.2d 40 (La.1977). The general prescriptive period for personal actions is ten years, La. C.C. art. 3499, and provisions which establish lesser terms of prescription should be restrained to the particular cases which they regulate, and to what is expressly included in their dispositions. Lacoste v. Benton, 3 La. Ann. 220 (1848).
Because the present action is personal, not real, and our review of the statutory provisions indicates no legislative expression that a shorter prescriptive term is to be applied to such an action, we conclude that an action by a purchaser of shares of stock for delivery of the stock certificate evidencing those shares is subject to a ten-year prescriptive period. Jerry's filing on January 4, 2005, was well within that prescriptive period and, thus, the trial court did not err in overruling Tommy's exception of prescription.

No Cause and No Right of Action
Tommy argues that Jerry's petition fails to state a cause of action because subsection 5.5 of Snake Ridge's corporate by-laws imposes a stock transfer restriction which prohibited Tommy from selling his shares of stock to Jerry alone and that any proposed sale would have to have been to all the other shareholders. As quoted above, sub-paragraph A of the transfer restrictions provides that a stockholder wishing to sell his stock can only do so by selling it to the "remaining members." Whether the mortgage indebtedness of the corporation was extinguished at the time of the sale dictates whether the sale to the remaining members would have to be for the stockholders' pro-rata share of the original purchase price or for the appraised value. Sub-paragraph B of the transfer restrictions, however, allows the heirs of a deceased shareholder to sell *353 their inherited shares to "another shareholder." The trial court found the reference in sub-paragraph A to the "remaining members" to be clarified by sub-paragraph B which allows the sale of a deceased shareholder's stock to another shareholder. Because there is no apparent reason why the by-laws would make a distinction between the sale of shares of a deceased stockholder and those of a living one, we detect no palpable error in this interpretation by the trial court.
We also note that the stock certificates issued by the corporation only contain the following language regarding restrictions on the transfer of stock:
MAY BE SOLD ONLY TO ANOTHER SHARE HOLDER OF THE CORPORATION
At the time the sale between Jerry and Tommy took place, La. R.S. 12:57(F)(1) provided:

No by-law or other restriction on the transfer of shares, (2) no provision for compulsory offer of shares of its own stock for purchase by, or sale to, the corporation, (3) no agreement among shareholders binding on others than the parties signatory thereto, and (4) no lien or privilege in favor of a corporation on shares of its own stock, shall be recognized or enforced, unless such restriction, provision or agreement, or the right of the corporation to such lien or privilege, is set forth or summarized, or a reference thereto and information as to where the same may be inspected is contained, in the certificates representing the corporation's shares. (Emphasis added).
Additionally, La. R.S. 10:8-204 provided and still provides:
A restriction on transfer of a security imposed by the issuer, even if otherwise lawful, is ineffective against a person without knowledge of the restriction unless:
(1) the security is certificated and the restriction is noted conspicuously on the security certificate; or
(2) the security is uncertificated and the registered owner has been notified of the restriction.
Assuming that the restriction of the by-laws is to be interpreted as prohibiting the sale of Tommy's shares to Jerry, the failure of that restriction to appear on the stock certificate would make it unenforceable absent evidence that the parties had knowledge of the restriction. The record is devoid of such evidence. Therefore, the restriction of the by-laws is not applicable to this transaction.
Lastly, even assuming Tommy sold his shares in violation of a transfer restriction of the corporation, the enforcement of such restrictions is intended for the benefit of the remaining shareholders excluded from any such sale or the corporation, not the shareholder whose sale violates the restriction. None of the remaining shareholders are contesting the sale. Tommy should not be allowed to induce Jerry to pay his debts with an offer to sell him his stock in exchange and then claim the benefit of a transfer restriction prohibiting such a sale. Accordingly, we see no error in the trial court's denial of the exceptions of no cause of action and no right of action.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is hereby affirmed. Costs of this appeal are to be borne by Tommy Mercer.
AFFIRMED.