436 So.2d 743 (1983)
Erskine Griffin COOK, Plaintiff-Appellant,
v.
Brenda Bordelon COOK, Defendant-Appellee.
No. 83-142.
Court of Appeal of Louisiana, Third Circuit.
August 10, 1983.
*744 Edward A. Kaplan, Alexandria, for plaintiff-appellant.
Downs & Downs, James C. Downs, Alexandria, for defendant-appellee.
Before GUIDRY, FORET and PICKETT[*], JJ.
GUIDRY, Judge.
Plaintiff, Erskine G. Cook, appeals from a judgment of the trial court which rejected his demand for termination of a previous alimony award in favor of his former wife, Brenda B. Cook.
Plaintiff and defendant were divorced on June 16, 1982. Subsequently, by judgment dated October 28, 1982, Brenda was awarded alimony in the sum of $250.00 per month, commencing September 1, 1982, pursuant to the provisions of LSA-C.C. Article 160. On November 17, 1982, plaintiff filed a rule seeking a judgment terminating the previously granted alimony award on the ground that defendant was living in a state of "open concubinage". In the alternative, plaintiff sought to have the alimony award reduced. The trial court, by judgment dated December 21, 1982, rejected plaintiff's demand for termination of alimony but granted his alternative demand, reducing the amount of alimony payable to Brenda B. Cook to $200.00 per month. Plaintiff appeals from this latter judgment contending that the trial court erred in (1) failing to find that Brenda B. Cook was living in a state of "open concubinage" within the intendment and meaning of LSA-C.C. Art. 160; and, (2) failing to find that Brenda Cook has sufficient means for her own support. We find merit in neither of these contentions.
Brenda Cook has an eighth grade education. At the time of the initial alimony award, she was unemployed. The trial judge in his reasons for judgment granting the initial alimony award stated as follows with regard to Brenda's earning capacity:
"In considering Brenda Cook's entitlement to alimony, this court has considered her earning capability, in light of all other circumstances, to be very low. She has no skills or specialized training *745 and is competing in a particularly deflated job market."

Subsequent to the initial award of alimony, Brenda secured employment as a housekeeper in the home of Billy Wayne Wallace, a thirty-three year old divorcee. According to her agreement with Mr. Wallace, she is paid $100.00 cash per month plus meals and automobile expenses. Brenda testified that, in addition to her housekeeping chores, she cares for Mr. Wallace's two minor children until he returns from work each day. At the outset of the employment relationship, Brenda commuted each day from Alexandria to the Wallace home in nearby Bentley, Louisiana. However, after a short time she began to live in the home of Mr. Wallace's father, which is located next door to the Billy Wayne Wallace home. Brenda testified further that although her duties end at about 7 p.m., she would often stay over until 9 or 10 p.m. watching television etc. with Mr. Wallace and his children. Brenda categorically denied any romantic interest in Mr. Wallace testifying that her only relationship with Mr. Wallace was that of employer-employee. Brenda's testimony, as above set forth, was corroborated by Mr. Wallace and his father, Seville Wallace. To counter the above, defendant offered the testimony of one, Robert Murphy, a private detective who conducted a surveillance of the Billy Wayne Wallace home on several occasions. In sum, Murphy testified that Brenda remained over night in the Billy Wayne Wallace home on the several occasions of his surveillance.
Appellant contends that the record establishes that Brenda Cook and Billy Wayne Wallace are living in a state of open concubinage within the meaning of LSA-C.C. Article 160, which reads in pertinent part as follows:
". . .
This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage
. . ."
The term "concubinage" was well defined in the jurisprudence of this state prior to the passage of Act 580 of 1982, which amended Article 160 to provide for termination of alimony if the spouse to whom it has been awarded enters into open concubinage. In the recent case of Henderson v. Travelers Insurance Co. et al., 354 So.2d 1031 (La.1978), the Supreme Court stated:

"The status as concubine arises when a man and a woman live together in a permanent relationship as husband and wife, although without benefit of matrimony or a putative marriage. See, e.g.; Succession of Franz, 232 La. 310, 94 So.2d 270 (1957); Succession of Jahraus, 114 La. 456, 38 So. 417 (1905); Succession of Keuhling, 187 So.2d 520 (La.App. 3rd Cir. 1966); Note, 32 Tul.L.Rev. 127 (1957). As we stated in Gauff v. Johnson, 161 La. 975, 977, 109 So. 782, 783 (1926): `... the concubine must not be confounded with the courtesan, or even what is ordinarily called a mistress. She is a wife without title.'"

The term "open" when used together with the word concubinage is equally well defined in our jurisprudence. In Succession of Keuhling, 187 So.2d 520 (La.App. 3rd Cir.1966), this court in considering the history and interpretation of the word "open" stated:
"Succession of Jahraus, supra, also discusses at length the history and interpretation of the word `open' as used in Article 1481. It is explained that in early French Law the word `notorious' was used, instead of `open'. This was perpetuated in the Code Napoleon and led to many scandals resulting from scrutiny into the private lives of persons deceased. The framers of our own Civil Code, being aware of this situation, substituted the word `open' for `notorious', so that `mere notoriety should not suffice, but absence of concealment or disguise should be requisite.' The court explained the rationale of the redactors of our Code as follows:
`For these reasons, they carefully and studiously confined the provision to "those who have lived together in open concubinage," meaning by the word *746 "open" that the concubinage should be so public as to be practically avowed, not necessarily by word, but at any rate by unambiguous, unequivocal conduct; that the relations must be such that, when sought to be made the basis of judicial action, no odious inquisitions might be necessary, and no nice poising of testimony, as in this case.'"
With this understanding of the term "open concubinage", we have little difficulty in concluding, as did the learned trial judge, that the record falls short of establishing that Brenda has entered into "open concubinage" within the meaning and intendment of LSA-C.C. Article 160. In sum, the record does not establish that the relationship between Brenda Cook and Billy Wayne Wallace was concubinage or that it was open, as these terms have been interpreted in our jurisprudence.
As aforestated, we find appellant's second assignment of error equally without merit. No detailed discussion of the evidence is required in answer to appellant's contention that the trial judge erred in failing to find that Brenda Cook has sufficient means for her own support. In the initial judgment dated October 28, 1982, which is now final, Brenda was determined to be entitled to alimony, the trial court concluding that because of her lack of skill, education and training her employment capability was extremely limited. Since rendition of that judgment, Brenda has found employment however, as reflected by the record, her income and other emoluments therefrom are not sufficient to provide her with the basic necessities of life. The trial court, in maintaining Brenda's right to alimony at a reduced rate, opined in oral reasons as follows:
"Now, with respect to the alternative request for a reduction in alimony, the court does take into account the facts that at the time the $250.00 award was made some few months ago Mrs. Cook was unemployed at the time and at that time Mr. Cook was working his regular hours on regular schedule employment in so (sic) a way that he was earning a sum of roughly $2,000.00 a month. Since that time, Mrs. Cook as (sic) become employed, although the basic salary is meager, there are other emoluments flowing from their employment and Mr. Cook is now indicating that he's been reduced some one-third of his income.
Under the circumstances of Mrs. Cook's present employment of increasing her earnings as well as decreasing her expenses and in view of Mr. Cook's change in work status, the demands in the Rule to reduce alimony are granted to such extent that the amount fixed at $250.00 is reduced to $200.00 commencing January 1, $200.00 per month commencing January 1, 1983 under the present set of circumstances and the court would emphasize that to be under the present set of circumstances; that is, given Mrs. Cook's income and emoluments flowing therefrom and the fact that Mr. Cook is on the extra board and indicates that he's receiving some thirty percent or forty percent reduction in his normal income. If those facts were to change, then, of course, it would be another ball game."
The trial judge is given much discretion in determining an appropriate amount of alimony and his decree should not be adjusted or reversed absent a clear showing of abuse. In this case, we find no abuse of the trial court's discretion.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[*] Judge John S. Pickett, Jr., 10th Judicial District Court, Judge Ad Hoc.