459 So.2d 1231 (1984)
The SUCCESSION OF Ethel Sanders PAYNE and Willie Payne
v.
Althea PIGOTT.
No. 83 CA 1114.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
*1232 Donald Lee, Bogalusa, for plaintiff.
Sondra Cheek, Bogalusa, for defendant.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
The issue presented in this suit for declaratory judgment is whether or not decedent, Willie Payne, made a valid inter vivos donation of certain shares of stock.
Willie Payne was married to Veda Williams and of this union nine children were born. At some point during their marriage *1233 (date unknown) the parties became physically separated. In 1966 defendant, Althea Pigott, became acquainted with Mr. Payne and shortly thereafter became, in her own words, "his old lady." Ms. Pigott testified she and Mr. Payne lived "back and forth to one another's house" and that she took care of him, his elderly mother and his teenage children. Later, when Mr. Payne became ill, she cared for him until his death on June 10, 1982.
Approximately one year prior to Mr. Payne's death, he allegedly donated to Ms. Pigott 362 shares of "Entex" (formerly United Gas Co.) stock. Shortly after Mr. Payne died, Obediah Payne, one of his children, and Robert Black, an attorney, filed a petition to be recognized as co-administrators of the estates of Willie Payne, Percy Payne (Willie's father who died in 1958) and Ethel Sanders Payne (Willie's mother who died in 1969). The co-administrators then filed a "Petition for Declaratory Judgment," asking the court to determine the ownership of "514 shares of stock with Entex, Inc." The petition alleged Ms. Pigott had taken possession of the stock after decedent's death and that she refused to relinquish it.
A trial was held and judgment rendered in favor of Ms. Pigott, declaring her to be the sole owner of 362 shares of Entex stock.[1] In written reasons for judgment the court stated it found Mr. Payne donated the stock to Ms. Pigott, "... for the services she rendered to him and his family." The succession representative then filed this suspensive appeal.
The appellants contend the alleged donation was invalid because it was not passed before a notary and two witnesses as required by La.Civ.Code art. 1536[2] and the majority of the stock certificates were not indorsed as required by La.R.S. 10:8-308 and 8-309.[3] The formalities of Article 1536 are not necessary if shares of stock are validly transferred pursuant to Louisiana stock-transfer legislation. Primeaux v. Libersat, 322 So.2d 147 (La.1975); Smith v. Smith, 311 So.2d 514 (La.App. 3rd Cir.1974), writ denied, 313 So.2d 840 (La.1975); Succession of Hall, 198 So.2d 511 (La.App. 2nd Cir.1967), application denied, 250 La. 974, 200 So.2d 664 (1967). Further, since Louisiana stock-transfer legislation is intended for the protection of third persons dealing with the apparent owner of the stock, a court may look to the intent of the parties to the transfer to see if there was a valid transfer of ownership between them. Succession of Dunham, 408 So.2d 888 (La.1981); Wilson v. H.J. Wilson Co., Inc., 430 So.2d 1227 (La.App. 1st Cir.1983); Pearce v. Rogers, 423 So.2d 83 (La.App. 1st Cir.1982).
Concerning Mr. Payne's intent when he made the donation, Ms. Pigott stated that approximately one year before his death, she experienced a financial crisis and was in danger of losing her home. She discussed her problems with Mr. Payne and testified he gave her the stock certificates at that time. She elaborated at trial as follows:
"He told me he wanted me to have that stock because I had been so good and so nice to him and that is something he wanted me to have."
At that time Mr. Payne apparently indorsed three of the certificates (representing a total of 39 shares) and told Ms. Pigott *1234 not to "spend them" unless absolutely necessary. She stated he never asked her to return the certificates to him. Although the evidence concerning Mr. Payne's intent is not extensive, it is uncontradicted and establishes sufficiently he gave Ms. Pigott the stock in appreciation of the services she rendered to him over the years. As always, the trial court is granted a great deal of discretion in reaching factual conclusions. We find no error in the determination that Mr. Payne delivered the stock certificates to Ms. Pigott with a donative intent.
Under the Investment Securities Chapter of the Louisiana Commercial Laws (La.R.S. 10:8-101 et seq.), the word "purchase" includes in its meaning "taking by... gift" and a "purchaser" is "a person who takes by purchase." La.R.S. 10:1-201. La.R.S. 10:8-301(1) provides, in pertinent part, as follows:

Upon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey except that a purchaser who has himself been a party to any fraud or illegality affecting the security or who as a prior holder had notice of an adverse claim cannot improve his position by taking from a later bona fide purchaser. (Emphasis added).
Thirty-nine of the 362 shares were properly indorsed over to Ms. Pigott. La.R.S. 10:8-308. La.R.S. 10:8-307 provides as follows:
Where a security in registered form has been delivered to a purchaser without a necessary indorsement he may become a bona fide purchaser only as of the time the indorsement is supplied, but against the transferor the transfer is complete upon delivery and the purchaser has a specifically enforceable right to have any necessary indorsement supplied. (Emphasis added).
Thus, although 323 shares were delivered to Ms. Pigott without indorsement, as against Mr. Payne the donation was complete on delivery and she had a right to require his indorsement.
Appellant contends the donation was invalid under Civ.Code art. 1481, which prohibits donations of immovables, or movables constituting more than one-tenth of the donor's estate, between those who have lived together in open concubinage.[4] Concerning the services rendered by Ms. Pigott, we conclude she acted as a "wife" in caring for Mr. Payne and his family for sixteen years. Ms. Pigott testified she cooked for him, washed clothes, paid the bills and "kept house" in addition to caring for his mother during her illness, and for his teenage children. She was "his common-law wife", "did everything that a wife would have done for him", "was his old lady" and (according to Gloria Payne Payne's daughter) lived with Mr. Payne "as man and wife". Ms. Pigott acknowledged in her testimony that the general public had knowledge that she and Mr. Payne were living together. She knew Mr. Payne was married and was not divorced. This relationship was open concubinage. Thomas v. Thomas, 440 So.2d 879 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 597 (La. 1983); Cook v. Cook, 436 So.2d 743 (La. App. 3rd Cir.1983).
Ms. Pigott argues that the donation is remunerative (i.e., for services rendered as defined in La.Civ.Code art. 1523), and, pursuant to La.Civ.Code art. 1526, the provisions of Article 1481 are not applicable. Pretermitting the issue of whether Article 1526 excludes Article 1481 from applying to remunerative donations, we find that the donation is gratuitous and not remunerative. In Schwegmann v. Schwegmann, 441 So.2d 316, 324 (La.App. 5th Cir.1983), writ denied, 443 So.2d 1122 (La. 1984), the court noted that "where parties *1235 to a contract cohabit in a sexual relationship and their agreement to cohabit is part of the basis for the agreement between them, the agreement is unenforceable because it is an unlawful contract for meretricious services." The court further pointed out that the support and subsistence provided by the paramour in a concubinage relationship is "full remuneration" for the services provided by the concubine. In Sparrow v. Sparrow, 231 La. 966, 93 So.2d 232 (1957), the court observed that where the initial motive and purpose for a paramour and concubine coming together was concubinage, the taint affected the continued relationship. In Guerin v. Bonaventure, 212 So.2d 459 (La.App. 1st Cir.1968), this court held that where the work done by a concubine in establishing and running two businesses was inextricably entwined with the concubinage relationship, she could not claim ownership in the businesses or otherwise recover. In Schwegmann it was held a concubine could not recover in quantum meruit for domestic services performed where those services were inextricably interwoven in the concubinage relationship. In Brown v. Brown, 459 So.2d 560 (La.App. 1st Cir.1984), this court held the services performed by a concubine were not a valid consideration to entitle her to be a co-owner of immovable property even though she was a co-vendee in the act of sale. By analogy from the above cases, we conclude the services performed by a concubine as part of the concubinage relationship cannot serve as a valid consideration to convert a gratuitous donation into a remunerative one. See also La.Civ.Code arts. 11, 12 and 1519. The support and subsistence provided by Mr. Payne were "full remuneration" for the services performed by Ms. Pigott. The donation herein was gratuitous, Article 1526 is not controlling, and Article 1481 requires the donation to be reduced to one-tenth (1/10) of the value of Mr. Payne's estate.
We take care to point out our ruling herein only adjudicates the validity and extent of the purported donation between the parties thereto, Mr. Payne (represented herein by the succession representatives) and Ms. Pigott. Because there has been no tableau of distribution homologated or judgment of possession rendered which finally determine the nature and value of the stock, the rights of third persons vis-a-vis the donation have not been finally determined. See, for example, La.Civ.Code arts. 2349, 2351 and 2353.
For the foregoing reasons, the judgment of the district court declaring Ms. Pigott to be the owner of the 362 shares of Entex stock is reversed, and this cause is remanded to the district court for further proceedings consistent with the views expressed herein. Appellee is cast for all costs.
REVERSED AND REMANDED.
NOTES
[1] Although the petition questioned the ownership of 514 shares of stock, the judgment dealt only with 362 shares. Testimony at trial indicated the succession had already collected the remaining shares.
[2] La.Civ.Code art. 1536 provides as follows:

An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.
[3] Prior to January 1, 1979, stock transfers in Louisiana were governed by the Louisiana Uniform Stock Transfer Law, La.R.S. 12:601-643. On that date, provisions similar to Article 8 of the Uniform Commercial Code relating to "Investment Securities" became effective and were enacted as La.R.S. 10:8-101, et seq. of the Louisiana Commercial Laws. The title 12 provisions on stock transfers, (except § 601-603) were repealed.
[4] La.Civ.Code art. 1481 provides as follows:

Those who have lived together in open concubinage are respectively incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables; and if they make a donation of movables, it can not exceed one-tenth part of the whole value of their estate.
Those who afterwards marry are excepted from this rule.