LANIER, Judge.
This is a suit in contract seeking payment of a promissory note. The makers of the note answered and pled the affirmative defense of want or failure of consideration. The trial court found as fact there was good and valid consideration for the note and rendered a judgment in favor of the plaintiff. This devolutive appeal followed.
FACTS
Prior to August of 1982, Bruce Shapiro was a lot manager for D & Carter Leasing, Inc. (D & Carter) in Giddings, Texas. Shapiro owned 200 shares of D & Carter stock. This stock had been pledged to the Bank of Greensburg (Bank) of St. Helena Parish, Louisiana, to secure a loan, the proceeds of *48 which Shapiro used to buy the stock. The note evidencing this loan was personally endorsed by Clay Doughty, D & Carter’s vice president.
Shapiro left the employment of D & Carter and was replaced by Jerry Joe Forrest. Forrest and his wife, Susan, became interested in acquiring stock in D & Carter. Shapiro told Doughty he wanted to sell his stock in D & Carter, and Doughty told the Forrests. Doughty also told the Forrests that it was D & Carter’s company policy that employees of D & Carter would be given first opportunity to buy D & Carter stock.
About August of 1982, Doughty and the Forrests went to the Bank and met with the Bank’s president, Henry B. Meyers. Meyers was told the Forrests wanted to buy Shapiro’s stock in D & Carter. The consideration for the sale was the balance due by Shapiro to the Bank, that is, the Forrests would pay the balance due on Shapiro’s note pursuant to the note’s terms. The Bank, through Meyers, agreed to finance the transaction, provided the Forrests pledged their D & Carter stock to the Bank. The Forrests signed a promissory note payable to the order of the Bank. In their testimony, the Forrests claim the note was completely blank when signed; Meyers, in his testimony, stated the date and the amount were blank.
Jerry Joe Forrest testified that, after he and his wife signed the note at the Bank, they went to the D & Carter office (apparently in Greensburg) and talked to Pat Patterson, D & Carter’s general manager. Patterson told the Forrests they should not buy the D & Carter stock because D & Carter was going out of business and the stock was worthless. The Forrests went back to see Meyers at the Bank and told him they no longer wanted to buy the stock because it was worthless. The Forrests did not get the note back. Several days later, Mrs. Forrest called Meyers and told him they did not want the stock. Forrest called Shapiro and told him not to turn the stock over to the Bank because the For-rests were not going to buy it. Meyers called Forrest in December of 1982 and asked him what he was going to do about the stock, and Forrest told Meyers he did not want it. The parties stipulated that the testimony of Mrs. Forrest would be the same as Mr. Forrest.
Meyers testified he did not remember the Forrests coming back to his office after the note was signed. Meyers admitted that several days after the note was signed Mrs. Forrest called him and said the For-rests no longer wanted the stock.
The Bank, through its attorney, and after some effort, located Shapiro in Oklahoma and had him endorse his stock certificate. Meyers took Shapiro’s stock certificate to the D & Carter office in Greens-burg and had a new certificate issued in the name of Jerry Forrester. Meyers kept this certificate in the Bank files on the Forrests’ loan.
After Meyers received the Forrests’ stock certificate in D & Carter, he filled in the note previously signed by the Forrests. The note is dated November 11, 1982, and is for $30,670.80, payable in 60 monthly installments of $511.18 beginning on December 15, 1982. The note provides for 18% per annum interest from date of maturity and provides for an attorney fee of 25% of the principal and interest. The reverse side of the note shows it is secured by a pledge of 200 shares of D & Carter stock from Jerry J. Forrest and that the face amount of the note of $30,670.80 is comprised of $20,091.11 in principal and $10,579.69 in interest. The Forrests made no payments on this note. This suit was filed on March 8, 1984.
THE BANK AS A MANDATORY FOR THE FORRESTS

(Assignment of Error Number 1)

The Forrests contend the Bank was acting as their mandatory when it had the D & Carter stock transferred from Shapiro to them, this mandate was revoked prior to the actual transfer of the stock in November of 1982, the transfer of the stock was accomplished without authority, and the trial court “erred in not finding that the man *49 date to the Bank of Greensburg had been terminated.”
This argument seems to assume that the date of transfer of the stock certificate on the records of D & Carter controls the legal relations between Shapiro and the Forrests and between the Forrests and the Bank. Such an assumption is not well founded. Louisiana stock transfer legislation, La.R.S. 10:8-101 et seq., is designed for the protection of third persons dealing with the apparent owner of a stock certificate; a court may look to the intent of the parties to a stock transfer to see if, and when, there was a valid transfer of ownership between them. Succession of Payne v. Pigott, 459 So.2d 1231 (La.App. 1st Cir. 1984). A sale of a movable is completed and the ownership of it is transferred to the purchaser when there is an agreement (consent) for the object and the price, even though the object has not been delivered nor the price paid. La.C.C. art. 2456; T & J Services, Inc. v. Hall-Buck Marine Service Company, 422 So.2d 1382 (La.App. 1st Cir.1982). This rule of law is applicable between the parties to a sale of corporate stock. Succession of Dunham, 408 So.2d 888 (La.1981). The evidence shows that, when Doughty and the Forrests went to the Bank, Shapiro and the Forrests had agreed that Shapiro would sell his 200 shares of D & Carter stock to the Forrests for a price of the balance due on the loan by the Bank to Shapiro. This obligation was apparently subject to the suspensive condition that the Forrests obtain financing from the Bank for the price. Cf. Bonfanti Marine, Inc. v. Clement, 439 So.2d 537 (La.App. 1st Cir.1983) and the cases cited therein. When the Bank approved the loan to the Forrests, the obligation of sale between Shapiro and the Forrests became executory and enforceable. La.C.C. art. 1767.
The principal contract between the Forrests and the Bank is a loan for consumption on interest. La.C.C. arts. 2891 and 2892. A loan for consumption is an agreement by which one person (lender) delivers to another (borrower) a certain quantity of things which are consumed by use, thereby obligating the borrower to return to the lender as much of the same kind and quality of things. La.C.C. art. 2910. Money may be given in a loan for consumption. La.C.C. art. 2912 and 2913. The borrower is obligated to restore the thing lent in the same quantity and condition, and at the place and time agreed on. La.C.C. art. 2920. In a loan for consumption of money, it is lawful to stipulate the payment of interest at a rate authorized by law. La.C.C. art. 2923 and 2924. Parol evidence may be used to prove a loan agreement. La.C.C. art. 1927. Cf. Boasso v. McIntyre, 344 So.2d 403 (La.App. 1st Cir.1977). The evidence shows that the Forrests and the Bank verbally agreed that the Bank would loan the Forrests an amount of money equal to the balance due on the Bank-Shapiro loan so that the For-rests could buy Shapiro’s D & Carter stock. The Forrests signed an incomplete promissory note as evidence of this agreement. The agreement to make the loan became binding on the parties at this point in time. The Forrests do not contest the accuracy of the terms of the promissory note as it was completed by the Bank. Those terms show the Forrests obligated themselves to pay the money back to the Bank with interest and in monthly installments. The promissory note became enforceable and effective when it was'completed and dated on November 11, 1982. La.R.S. 10:3-115.
The D & Carter stock that the For-rests bought from Shapiro was pledged to secure their loan from the Bank. A pledge is an accessory contract by which a debtor gives something to his creditor as a security for his debt. La.C.C. arts. 1913 and 3133. It is essential to a pledge that the creditor be put in possession of the thing given to him in pledge. La.C.C. art. 3152. The evidence shows the Bank had possession of Shapiro’s D & Carter stock certificate because the stock was pledged to the Bank by Shapiro as security for his loan. The Forrests agreed to pledge to the Bank the D & Carter stock they bought from Shapiro. To perfect the pledge in its favor, the Bank acquired Shapiro’s endorsement on the stock certificate in its possession, *50 brought the Shapiro stock certifícate to D & Carter, D & Carter apparently cancelled Shapiro’s certificate and then issued a new certificate to Jerry Forrester. The Bank took possession of the new certificate, as it had a right to do under the accessory pledge contract it had with the Forrests. The new stock certificate was evidence of the Forrests’ ownership of the D & Carter stock previously acquired from Shapiro. However, the ownership of the stock passed from Shapiro to the Forrests, the loan agreement was consummated, and the Forrests’ ownership of the stock was pledged at the meeting between Doughty, the Forrests and Meyers at the Bank.
A mandate (agency) is an act by which one person gives power to another to transact for him, and in his name, one or several affairs. La.C.C. art. 2985. The Bank did not act as a mandatary for the Forrests when it had Shapiro’s certificate cancelled and a new one issued to the For-rests; the Bank was acting in its own behalf to perfect the pledge of the stock to it by the Forrests. As between Shapiro and the Forrests, the ownership of the stock was transferred when they reached an agreement on the price of the stock and the Bank agreed to finance the transaction. The changing of ownership on a stock certificate merely evidenced ownership in the Forrests as it might affect third persons to the Shapiro-Forrests sale. The Bank was such a third person, and it was in its interest to perfect the pledge accordingly. The trial court’s ruling was correct.
This assignment of error is without merit.
FAILURE OF CONSIDERATION

(Assignment of Error Number 2)

The trial court held the consideration for the Bank-Forrests note was the payment of the Bank-Shapiro note and that this was a good and valid consideration.
The Forrests argue that the trial court committed error by not finding that there was a failure or want of consideration. Specifically, the Forrests assert the following:
By Mr. Meyers’ own testimony he was clearly instructed not to complete the proposed transaction. At that time, the Forrests had received nothing from the Bank of Greensburg or from anyone else. Although there was testimony at the trial of this matter' that the stock which Mr. Meyers had transferred into Mr. Forrest’s name had no value, that issue is irrelevant. The Forrests’ agent, the Bank of Greensburg (through Mr. Meyers), had been advised not to complete this sale, but the bank had done so anyway. At the time that the agency relationship ceased, the Forrests had signed a note for which the Bank of Greensburg gave nothing and expected to give nothing.
Failure of consideration is an affirmative defense. La.C.C.P. art. 1005. A person asserting an affirmative defense has the burden of proving it by a preponderance of the evidence. A Better Place, Inc. v. Gia-ni Investment Company, 445 So.2d 728 (La.1984).
The argument advanced by the For-rests on failure of consideration assumes that the stock sale, loan and pledge were not completed when the meeting was held at the Bank and that the Bank acted as a mandatary for the Forrests in having the new stock certificate issued. As previously indicated, these assumptions are not valid as a matter of fact and law. The consideration for the Bank-Forrest loan was the money advanced by the Bank to the For-rests to pay off the Shapiro loan. The actual mechanics of this transaction was that the Bank lent the balance due on the Shapiro loan to the Forrests, the Forrests paid this amount to Shapiro as the price of the sale, and Shapiro paid this amount to the Bank to cancel his loan. As a practical matter, this was all done in paper transactions and no money actually changed hands. However, the consideration is still valid. The ruling of the trial court on this issue is correct.
This assignment of error is without merit.
*51 DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.