992 So.2d 1072 (2008)
Harold Peter CHAMPAGNE
v.
Roselee Lovell CHAMPAGNE.
No. 2007 CA 1078.
Court of Appeal of Louisiana, First Circuit.
June 27, 2008.
*1073 Jerri G. Smitko, Houma, LA, Plaintiff-Appellant, Harold Peter Champagne.
Barron M. Whipple, Houma, LA, for Defendant-Appellee, Rosalee Lovell Champagne.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
A former spouse appeals a portion of a judgment that partitioned community property, challenging the trial court's classification of certain shares of bank stock titled in his name and his former wife's name. For the following reasons, we amend, and as amended, we affirm.

Factual Background and Procedural History
Harold Peter Champagne (Harold) and Rosalee Lovell Champagne[1] (Rosalee) were married on May 31, 1959, and divorced on October 17, 2003. In connection with his petition for divorce, Harold sought to partition the parties' community property. In his sworn detailed descriptive list, Harold listed 354 shares of Bank One stock in the name of "Harold or Rosalee Champagne" as a community asset in Rosalee's possession. On that same list, Harold indicated that he held, as his separate property, 354 shares of Bank One stock by virtue of a gift from his mother after his father's death. His list indicated that these shares were also registered to "Harold or Rosalee Champagne." On the other hand, Rosalee claimed in her sworn detailed descriptive list that 356 shares of Bank One stock registered to "Harold or Rosalee Champagne" were community property.[2]
Following a trial, the trial court determined that all of the disputed shares of stock were community property. Harold appealed, contending the trial court erred in finding that the shares of bank stock were community property and in awarding Rosalee an undivided one-half interest in the bank stock.

Characterization of the Shares of Bank Stock
Harold was the son of Pierre and Blanche B. Champagne. On June 3, 1985, a judgment of possession was signed in the Succession of Pierre Champagne, probate number 11882 of the Seventeenth Judicial District Court (Lafourche Parish).[3] This *1074 judgment refers to 11 separate stock certificates issued between August 30, 1963, and July 14, 1978, for a total of 346 shares of Raceland Bank and Trust Company (Raceland Bank) stock in the name of Pierre Champagne (Pierre) and 19 shares in the name of Blanche B. Champagne (Blanche), for a total of 365 shares. In the judgment, Blanche was recognized as Pierre's surviving spouse, and Harold was recognized as one of Pierre's three children. Blanche was declared to be the owner of an undivided one-half interest in the stock, and Harold and his siblings were declared to be the owners of the other undivided one-half interest, subject to a usufruct in their mother's favor.[4]
The petition for possession filed in the Succession of Blanche Babin Champagne, probate number 18169 of the Seventeenth Judicial District Court, reveals that Blanche died intestate on October 7, 2001. The sworn detailed descriptive list filed in Blanche's succession does not reflect ownership of any bank stock by her at the time of her death.
Harold testified that his father, Pierre, owned approximately 351 shares of Raceland Bank stock when he died. According to Harold, when his father passed away, his mother took over the Raceland Bank stock. He explained that the children "gave" all of the stock to their mother, but in time, she no longer wanted the stock in her name, so she "gave" the stock to him and his siblings. According to Harold, as a result of mergers and acquisitions, he and his siblings each eventually ended up with 178 shares of Premier Bancorp, Inc. (Premier) stock, as reflected by a certificate dated December 5, 1988.[5] He also said the total number of shares at issue was approximately 191 shares.[6] Harold explained that Blanche did not own any stock at the time of her death, because she had given it to her three children before she died. Harold testified that the stock was a gift from his parents to him and was registered in his and Rosalee's names because they were married; at no time did Harold intend for Rosalee to own half of the stock. Furthermore, Harold denied ever having executed an act of donation or any kind of notarial act to give any of the stock to Rosalee.
Harold offered the deposition of his sister, Catherine Champagne Hebert (Catherine), as an exhibit in this matter. Catherine handled the estates of both of her parents. According to Catherine, when Raceland Bank merged with Premier, Premier would no longer allow her mother to cash the dividend checks issued in connection with stock titled in Pierre's name; thus, the family filed pleadings in 1985 to open Pierre's succession. After the judgment of possession was signed on June 3, 1985, Blanche divided and transferred the Raceland Bank stock to Catherine, Harold, and their brother. Catherine explained that Pierre owned 346 shares and Blanche owned 19 shares. Each of the Champagne children received one third of the 365 shares of stock in Raceland Bank, which converted to the equivalent number of shares in Premier. Subsequently, Premier *1075 merged with Bank One, and then Bank One merged with J.P. Morgan Chase, resulting in an increase in the number of shares to 182 for each of the children.
Generally speaking, shares of stock in a corporation are incorporeal[7] movable property.[8] Concerning the requirements as to form for a donation of incorporeals, LSA-C.C. art. 1536 provides:
An act shall be passed before a notary public and two witnesses of every donation inter vivos of ... incorporeal things... under the penalty of nullity.
Thus, the donation inter vivos of shares of stock requires an authentic act. See Primeaux v. Libersat, 322 So.2d 147, 149 (La. 1975). However, the formalities of Article 1536 are not necessary if shares of stock are validly transferred pursuant to Louisiana stock-transfer legislation.[9]See Primeaux, 322 So.2d at 149; Succession of Payne v. Pigott, 459 So.2d 1231, 1233 (La. App. 1st Cir.1984). Further, since Louisiana stock-transfer legislation was intended for the protection of third persons dealing with the apparent owner of the stock, a court may look to the intent of the parties to the transfer to see if there was a valid transfer of ownership between them. Succession of Dunham, 408 So.2d 888, 893-94 (La.1981); Succession of Payne, 459 So.2d at 1233. In order to effect a valid donation, the substantive requirements of a divestment and donative intent must be fulfilled. Broussard v. Broussard, 340 So.2d 1309, 1312-13 (La.1976); Succession of Payne, 459 So.2d at 1233.
Rosalee did not dispute that the stocks in question were acquired as the result of a gift from Harold's parents. According to Rosalee, Pierre made gifts of a few shares to them jointly before he died. She did not reference any other mode of acquisition of the stocks in question. She testified that they jointly owned 175 to 195 shares of stock. During her testimony, she made no mention of a gift from Blanche in 1985.
On appeal, Rosalee asserts community ownership of the stock by virtue of the certificate of title. Initially, we note that the classification of property as separate or community is not determined by the name listed on the title, but rather by the time of acquisition, the nature of the transaction, and the source of funds used to acquire it. See LSA-C.C. arts. 2338 and 2341; Biondo v. Biondo, 99-0890 (La.App. 1st Cir.7/31/00), 769 So.2d 94, 108-09.
Catherine and Harold's testimony was consistent concerning the fact that Blanche *1076 had possession of all of the Raceland Bank stock following her husband's death and that she continued to collect the dividend payments. See LSA-C.C. art. 552. However, the evidence supports the fact that the majority of the shares of stock were still in Pierre's name when his succession was judicially opened, and it was this very fact that prompted the opening of Pierre's succession, due to Premier's unwillingness to allow Blanche to deposit the dividend checks issued in connection with those shares.
From the judgment of possession in Pierre's succession, it is clear that all of the undivided interests in the shares of stock owned by the Champagnes, upon Pierre's death, devolved one-half to Blanche, the surviving spouse, and one-half to their three children, subject to Blanche's usufruct.[10] Shares of stock are subject to the rules governing the usufruct of nonconsumables. LSA-C.C. art. 553, Revision Comments1976, comment (b). If the things subject to the usufruct are nonconsumables, the usufructuary has the right to possess them and to derive the utility, profits, and advantages that they may produce, under the obligation of preserving their substance. He is bound to use them as a prudent administrator and to deliver them to the naked owner at the termination of the usufruct. LSA-C.C. art. 539. Since the usufructuary does not acquire the ownership of the nonconsumable property subject to the usufruct, the usufructuary is not free to dispose of the property as he or she sees fit. Cf. LSA-C.C. art. 538, Revision Comments-1976, comment (b).
Pursuant to the judgment of possession in Pierre's succession, the undivided one-third interest in Pierre's undivided one-half interest of the stock that was transferred to Harold became his separate property, because it was acquired by inheritance. See LSA-C.C. art. 2341. Accordingly, the only interest in Pierre's undivided one-half interest which Blanche could have "transferred" shortly after the entry of the judgment of possession was her right to the usufruct of Pierre's one-half interest in the Raceland Bank stock.[11] The "transfer" of her interest in the shares of stock owned by her children pursuant to the judgment of possession in Pierre's succession would simply have terminated Blanche's rights as a usufructuary. See LSA-C.C. art. 622. Upon termination of the usufruct, full ownership is ordinarily vested in the naked owner. See LSA-C.C. art. 628 and Revision Comments1976, comment (b). Therefore, in June of 1985, Harold, as the naked owner, would have been vested with full ownership of an undivided one-sixth interest in the shares of stock, as his separate property, and the trial court legally erred in finding otherwise.
As to the "transfer" of Blanche's undivided one-half interest in the stock, the shares of stock in question were acquired by Harold and Rosalee during their marriage and titled in both of their names. Community property includes property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse and property donated to the spouses jointly. LSA-C.C. art. *1077 2338. Things in the possession of a spouse during the existence of the community are presumed to be community, but either spouse may prove that they are separate property. LSA-C.C. art. 2340. The spouse seeking to rebut the presumption bears the burden of proving the property is separate in nature. Ross v. Ross, 02-2984 (La.10/21/03), 857 So.2d 384, 390.
The trial court's finding regarding the nature of the property as community or separate is a factual determination that will not be disturbed absent manifest error. Ross, 857 So.2d at 395; Harvey v. Amoco Production Co., 96-1714 (La.App. 1st Cir.6/20/97), 696 So.2d 672, 677. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
The fact that Blanche transferred[12] her undivided one-half interest in the shares of stock is supported by the testimony of Harold and Catherine, by the Premier stock certificate issued to Harold and Rosalee dated December 5, 1988, and by the sworn detailed descriptive list filed in her succession proceeding revealing that Blanche no longer owned any interest in any stock at the time of her death. However, in determining whether Harold met his burden of proof that Blanche intended to transfer her undivided one-half interest in the shares of stock to him as his separate property, we consider the evidence offered as to the nature of the June 1985 transfer.
Harold testified that Blanche gave the stock to him and that he chose to put the stock in his and Rosalee's names because they were married and not because he intended for Rosalee to have half.[13] Harold's testimony regarding Blanche's transfer is corroborated by that of Catherine, who stated that Blanche transferred the stock to her three children in June 1985. Nonetheless, the trial court questioned why, if the stock was Harold's separate property, the stock certificate was titled in both of their names. Notably, the Premier stock certificate was the only documentary evidence of record regarding actual stock ownership by Harold or Rosalee, and this evidence supports a finding that Blanche intended to transfer her undivided one-half interest in the shares of stock to both Harold and Rosalee.
After considering the evidence, particularly the fact that the stock certificate was titled in both of their names, the trial court determined that Harold had failed to rebut the presumption that the stock belonged to the community, since the evidence did not rule out the possibility that Blanche intended that both Harold and Rosalee acquire her interest in the shares of stock. After giving deference to the trial court's factual determinations as we are required to do, we are unable to find that the trial court manifestly erred in finding that Harold did not meet his burden of proof with respect to the separate nature of those shares of stock owned and transferred by Blanche in June 1985.
In summary, we conclude that the trial court legally erred in finding that all of the bank stock that originated from the Raceland Bank stock recognized in Pierre's succession was community property. Clearly, Harold satisfied his burden of proof with respect to his one-third interest in his father's undivided one-half interest in the stock. However, with respect to Blanche's *1078 undivided one-half interest in the stock, Harold failed to meet his burden of proof as to the separate nature of the stock transferred by Blanche; accordingly, such stock is deemed to be community property.

Decree
For the foregoing reasons, we amend the trial court's judgment to recognize Harold Peter Champagne as the owner of an undivided three-fourth[14] interest and Rosalee Lovell Champagne as the owner of an undivided one-fourth interest in and to all shares of bank stock registered jointly in their names, including, but not limited to, stock certificate number XBB62350 for 178 shares of stock of Premier Bancorp, Inc., and all other shares of bank stock registered jointly in their names at Raceland Bank and Trust Company, Premier Bancorp, Inc., or their predecessors or successors. As amended, the judgment is affirmed. All costs associated with this appeal are assessed to the parties equally.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Although the petition and suit caption state that the defendant is "Roselee" Lovell Champagne, her answer, as well as her signature on various pleadings and exhibits, show the correct spelling of her name is "Rosalee."
[2] The numerical discrepancies were problematic throughout the trial, but the exact number of shares was eventually determined to be less than either of these estimates.
[3] Harold's sister, Catherine Champagne Hebert, testified by deposition that her father died on January 1, 1979.
[4] As a result of mergers and acquisitions by other banks, the stock in Raceland Bank was converted to stock in the successor banks. However, it seems clear that the stocks in question originate from the Raceland Bank stock referenced in Pierre's succession.
[5] A copy of stock certificate number XBB62350 for 178 shares of Premier stock was issued on December 5, 1988, to "Harold P. Champagne or Rosalie L. Champagne." Eventually, these were converted to shares in Bank One and, after a subsequent bank merger, were shares in J.P. Morgan Chase.
[6] We are unable to determine from the record whether the reference to "191 shares" relates to Premier stock or some other bank stock.
[7] Incorporeals are things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property. LSA-C.C. art. 461.
[8] Rights, obligations, and actions that apply to a movable thing are incorporeal movables. Movables of this kind are such as bonds, annuities, and interests or shares in entities possessing juridical personality. LSA-C.C. art. 473.
[9] Prior to January 1, 1979, stock transfers in Louisiana were governed by the Louisiana Uniform Stock Transfer Law, LSA-R.S. 12:601-643. On January 1, 1979, provisions similar to Chapter 8 of the Uniform Commercial Code relating to "Investment Securities" became effective and were enacted as LSA-R.S. 10:8-101 et seq. of the Louisiana Commercial Laws. See 1978 La. Acts, No. 165, § 1. The Title 12 provisions on stock transfers (except sections 601-603) were repealed. Succession of Payne v. Pigott, 459 So.2d 1231, 1233 n. 3 (La.App. 1st Cir.1984). By 1995 La. Acts, No. 884, § 1, effective January 1, 1996, Chapter 8 on Investment Securities was amended and reenacted. Since the transfer in question in this case occurred on or before the 1995 amendment, the pre-1996 version governs in this case. All further references to provisions of Chapter 8 of the Louisiana Commercial Laws are to the pre-1996 version.
[10] Between the time of Pierre's death and the signing of the judgment of possession, the heirs are treated as co-heirs. Successions of Scardino, 215 La. 472, 40 So.2d 923, 924-25 (1949); Blue v. Coastal Club, Inc., 524 So.2d 883, 884 n. 1 (La.App. 3rd Cir.), writ denied, 525 So.2d 1044 (La.1988).
[11] Harold and Catherine simply testified that Blanche gave the stock to her three children in June 1985, which obviously had to have occurred after the June 3, 1985 signing of the judgment of possession in Pierre's succession proceeding.
[12] Neither party raises an issue as to the validity of the transfer by Blanche of her undivided interest in the shares of stock.
[13] In art effort to explain their possible joint ownership of the stock, Rosalee only referred to purported transfers from Pierre that occurred prior to Pierre's death.
[14] Harold's three-fourth interest in the stock allocated to him and Rosalee derives from his full ownership acquired by inheritance from his father and by the termination of his mother's usufruct of one half of the stock and from his half ownership transferred by his mother of the other half of the stock.