STEWART, J.
|TAt issue in this appeal by the plaintiff, Kenneth D. Malone (“Ken”), is the validity of a donation of one share of stock in Winnsboro Equipment, Inc. (“WEI”), a closely held, family-owned corporation that operates as a John Deere franchise dealership. Upon finding the purported donation by Doris Malone to her two sons, Ken and James G. Malone, Jr. (“Greg”), to be invalid, the trial court dissolved a temporary restraining order against WEI and dismissed Ken’s petitions for injunctive relief, writ of quo warranto, and writ of mandamus with prejudice. Ken now appeals. Finding no error in the trial court’s judgment, we affirm.
FACTS
This matter stems from a dispute between brothers Ken and Greg, who are the majority shareholders in WEI. When their father, James G. Malone, Sr., died in 2007, Ken and Greg each owned 849 shares WEI, and their father owned two shares. In accordance with a judgment of possession rendered in Mr. Malone’s succession proceedings on April 13, 2009, Doris Malone, the surviving spouse, was recognized as owner of one share as part of her one-half interest in the community property, *1042 and Ken and Greg each received one-half of the other share as legatees. Thereafter, Greg and Ken each owned 849.50 shares, and Doris owned one share.
Sometime in the latter half of 2009, just prior to undergoing surgery, Doris executed a document purporting to donate her one share to Ken and Greg with each receiving a one-half share and each then owning 850 shares. The act of donation, which is not dated, was signed by Doris, Ken, Greg, and two witnesses. It was drawn up in the form of a notarial act but was not [¡.notarized. Though the act of donation states that Doris, contemporaneously with signing the document, delivered the property to Greg and Ken and that they accepted the donation and received the property, there is no evidence that a stock certificate was in fact transferred between them by endorsement and delivery.
Greg, who managed WEI, and Ken, who worked in sales, had different ideas about what to do with the business. Ken wanted to sell. Greg did not. In April 2010, around the time he ceased working at WEI, Ken requested some documents from WEI’s attorney, Gene Cicardo. On April 29, 2010, Cicardo sent a fax to Ken which included the act of donation. Cicar-do wrote on the cover sheet of the fax that the documents needed to be redone because they had not been notarized. Ken did not act on this information.
It appears from the record that Greg already knew that there was a problem affecting the validity of the act of donation. He testified that when he sent the original documents to Cicardo, he found out they were not good. Greg testified that he told Cicardo to wait on doing anything more because Doris came out of surgery okay and because of “the way that things were coming down around the John Deere store.” Greg did not share with Ken his knowledge about the problem with the act of donation.
On November 18, 2010, Ken filed a shareholder derivative action against Greg. Around this same time, Ken received a notice from Greg of an annual shareholders meeting to be held on December 14, 2010. Prior to 13the shareholders meeting, Greg obtained from Doris her “Irrevocable Proxy” allowing him to vote any share held by her.
On December 14, 2010, Greg, acting as secretary-treasurer of WEI, certified the stock register. The register listed outstanding shares from 1987 through April 13, 2009, the date of the judgment of possession when Doris received one share and the other was divided between Greg and Ken. A document from WEI’s books shows that the certificates representing the shares transferred by the judgment of possession were not issued until November 12, 2010; however, the certificates were apparently backdated to April 13, 2009. Greg also prepared a certified list of shareholders documenting he and Ken each owned 849.5 shares and Doris owned one.
The result of the December 14, 2010, shareholders meeting was that Greg was elected president of WEI and his wife, Phyllis, was elected secretary-treasurer. Ken, whom the record indicates may have been vice-president, lost his position as an officer though he remains a member of the board. Thereafter, Ken filed three actions on December 22, 2010.
First, Ken filed a petition for a temporary restraining order and injunctive relief against Greg, Phyllis, and WEI to enjoin them from making executive decisions pertaining to WEI, particularly regarding the alienation or encumbrance of any property. He also sought a judgment declaring himself and Greg owners of 50% of WEI each *1043 and declaring the actions taken at the shareholders meeting to be null and void. The trial court granted a temporary restraining order as prayed for in the petition.
|4Second, Ken filed a petition for a writ of quo warranto against Greg, Phyllis, and Doris demanding that they show by what authority they claim to be directors or officers of WEI. Third, Ken filed a petition for a writ of mandamus against Greg and Phyllis seeking to have them recognize the donation by Doris of her share of stock, to have the transfer recorded on the books of WEI and reflected on the certified list of shareholders, and to have new certificates issued.
These three actions were consolidated by agreement of the parties at the start of the hearing on January 6, 2011. The threshold question before the trial court was whether the donation by Doris of her one share of WEI stock to Ken and Greg had been properly confected. The trial court heard testimony regarding this issue and then took the matter under advisement before issuing written reasons for judgment on January 18, 2011. In short, the trial court found that the act of donation was not in the form of an authentic act as required for a donation inter vivos under La. C.C. art. 1541, that it was not in a form provided for donations of certain incorporeal movables under La. C.C. art. 1550, and that it was not in compliance with certain requirements of WEI’s articles of incorporation. The trial court also determined that the “irrevocable proxy” obtained by Greg from Doris could be revoked. In accordance with its written reasons, the trial court rendered a judgment on January 31, 2011, dissolving the temporary restraining order, dismissing with prejudice the three consolidated petitions, and holding the proxy to be revocable. Costs were assessed equally between Ken and Greg. 1 ¡¡The trial court noted in its reasons for judgment that neither brother has “clean hands” in this dispute.
Ken now appeals. He assigns as error the trial court’s findings that the donation was invalid, that the donation had not been completed and accepted because there was no endorsement and delivery of the stock certificate, and that Louisiana’s stock transfer laws apply under the second paragraph of La. C.C. art. 1550. He also assigns as error the trial court’s failure to find that the proxy had no effect and the denial of the claims for injunctive relief and writs of mandamus and quo warranto. Whether the donation was valid as to form is the core issue in these assignments of error.
DISCUSSION
A donation inter vivos is a contract by which the donor divests himself, at present and irrevocably, of a thing in favor of the donee, who accepts it. La. C.C. art. 1468; Thomson v. Thomson, 34,353 (La.App.2d Cir.1/24/01), 778 So.2d 736. As provided by La. C.C. art. 1541, a donation inter vivos shall be made by authentic act. The act of donation at issue was not notarized and is not in the form of an authentic act. Thus, it is not a valid donation under La. C.C. art. 1541.
A share of stock in a corporation is an incorporeal movable. La. C.C. art. 473. Donations of certain incorporeal movables may be made in a form provided by La. C.C. art. 1550, which states:
The donation or the acceptance of a donation of an incorporeal movable of the kind that is evidenced by a certificate, document, instrument, or other writing, and that is transferable by endorsement or delivery, may be made by authentic act or by compliance with the requirements | (¡otherwise applicable to *1044 the transfer of that particular kind of incorporeal movable.
In addition, an incorporeal movable that is investment property, as that term is defined in Chapter 9 of the Louisiana Commercial Laws, may also be donated by a writing signed by the donor that evidences donative intent and directs the transfer of the property to the donee or his account or for his benefit. Completion of the transfer to the donee or his account or for his benefit shall constitute acceptance of the donation.
This article is new and was added by Acts, No. 204, § 1, effective January 1, 2009, as part of the revision of the law on donations. Because the act of donation was signed sometime in the latter half of 2009, La. C.C. art. 1550 was in effect and is applicable to determine whether the donation was done in a proper form.
Statutory interpretation is subject to a de novo review on appeal. Harrah’s Bossier City Inv. Co., LLC v. Bridges, 2009-1916 (La.5/11/10), 41 So.3d 438. Discernment of the legislative intent is the goal of statutory interpretation. SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695 (La.6/29/01), 808 So.2d 294; Solow v. Heard McElroy & Vestal, L.L.P., 44,042 (La.App.2d Cir.4/8/09), 7 So.3d 1269, writ denied, 2009-1035 (La.9/4/09), 17 So.3d 961. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written with no further interpretation made in search of the legislative intent. La. C.C. art. 9. If the language is susceptible of different meanings, it must be interpreted to have the meaning that best conforms to the purpose of the law. La. C.C. art. 10. Moreover, laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13.
_JjThe legislative history of La. C.C. art. 1550 indicates that it was not intended to change the prior law (former C.C. article 1536), which required a notarial act for donations of incorporeal movables such as rents, credits, rights, or actions. Rather, article 1550 was drafted to further provide that donations of incorporeal movables evidenced by a certificate, document, instrument or other writing could be donated by authentic act or as provided in special rules applicable to the particular type of movable. See Louisiana Bill Digest, 2008 Reg. Sess. H.B. 527. Prior to the enactment of La. C.C. art. 1550, jurisprudence held that a donation of shares of stock may be made without the formalities of an authentic act so long as the shares of stock are transferred pursuant to Louisiana’s stock transfer laws. Primeaux v. Libersat, 322 So.2d 147 (La.1975); Champagne v. Champagne, 2007-1078 (La.App.1st Cir.6/27/08), 992 So.2d 1072; Moncrief v. Succession of Armstrong, 2005-1584 (La. App.3d Cir.9/27/06), 939 So.2d 714; Succession of Payne v. Pigott, 459 So.2d 1231 (La.App. 1st Cir.1984); Succession of Hall, 198 So.2d 511 (La.App. 2d Cir.1967), app. denied, 250 La. 974, 200 So.2d 664 (La.1967). We find that La. C.C. art. 1550 codifies this jurisprudential holding.
Ken does not argue that the donation was made in a form approved under the first paragraph of La. C.C. art. 1550. It is clear that it was neither in the form of an authentic act nor in compliance with the requirements applicable to the transfer of shares of stock, La. R.S. 10:8-101 et seq., of the Louisiana Commercial Laws. There was no delivery or indorsement as required under La. R.S. 10:8-301 or 10:8-304 for the transfer of securities. |RAs such, the donation was not completed in a form authorized under the first paragraph of La. C.C. art. 1550.
As to the second paragraph of La. C.C. art. 1550, the legislative history reveals that its purpose was to provide for dona *1045 tions of “investment property” by a document directing the transfer of such property in favor of the donee or for his benefit. See Louisiana Bill Digest, 2008 Reg. Sess. H.B. 527. La. C.C. art. 1550 refers us to the definition of “investment property” in Chapter 9 of the Louisiana Commercial Laws on secured transactions, which states that it is “a security, whether certificated or uncertificated, security entitlement, securities account, commodity contract, or commodity account.” La. R.S. 10:9-102(a)(40). Each of these terms is defined in the Commercial Laws.[1] Based on its review of the definition of “security” set forth at La. R.S. 10:8-102(15), the trial court found the share at issue to be investment property. This finding is not challenged on appeal. Moreover, whether the share at issue is a security, and thereby considered “investment property,” is answered by La. R.S. 10:8-103(a), which states, “A share or similar equity interest issued by a corporation, business trust, joint stock company, or similar entity is a security.” Uniform Commercial Code Comment No. 2 to this provision clarifies that ordinary corporate stock, including shares of closely held corporations, are securities.
Ken argues that the form of the donation satisfied the requirements of the second paragraph of La. C.C. art. 1550 and that the trial court erred | ain finding otherwise. He asserts that the trial court ignored the words “for his benefit” and the fact that the second paragraph provides a form of donation that is “in addition” to that provided in the first paragraph of the article. He also asserts that the proper analysis under the second paragraph is not whether a stock certificate was indorsed or delivered but whether it was transferred for the donee’s benefit. He quotes language from the act of donation stating that Doris does “irrevocably give, grant, alienate, confirm, and donate” her one share of stock to her sons and that she “contemporaneously with the signing” of the act “delivered said property” to them. He also refers to that part of the act which states that he and Greg “do hereby acknowledge to have received from donor the property” and declare their acceptance. Ken argues that this language shows there was completion of the transfer to him for his benefit.
We are not persuaded by Ken’s arguments. In general, any donation can be said to be for the benefit of the donee. However, the words “for his benefit” have a specific meaning under La. C.C. art. 1550. As explained in Comment (b) of the 2008 Revision Comments of article 1550, the words “for his benefit” are intended “to cover situations when the transfer may not be directly to the donee’s account, but would be used to pay something for his benefit, as for example, if the transfer is made to a bank to pay off a child’s debt.” The record does not show that the purported donation was made for Ken’s benefit as intended by La. C.C. art. 1550. Considering the definition of investment property, we find that the second paragraph of article 1550 was intended to facilitate the gratuitous transfer of such | inproperty, which would generally be held in bank or brokerage accounts, by the donor directing in writing that the property be transferred to “the donee or his account or for his benefit” and then by the completion of the transfer.
*1046 Even if, as found by the trial court, the writing signed by Doris directed the transfer of the share to Ken and Greg, the transfer was not completed as required by La. C.C. art. 1550. We agree with the trial court that completion of the donation (or transfer) of the WEI share would require compliance with the stock transfer law. Regardless of the language used in the writing signed by the parties, the record shows there was no delivery or in-dorsement as required by La. R.S. 10:8-301 or R.S. 10:8-804 for transfer of the one share.
Under Ken’s interpretation, any signed writing that expresses donative intent and states there has been delivery and acceptance would suffice to constitute a donation of a security or other investment property even though such an act would lack the indicia of reliability provided by either an authentic act or by compliance with requirements for completing transfers of the specific investment properties. Nothing in the legislative history or the article indicates that it was intended to allow a writing that is not in the form of an authentic act to effect a transfer of “investment property” without fulfillment of the specific requirements to complete the transfer of such property.
From our review of the record we find no error of law in the trial court’s interpretation of La. C.C. art. 1550 and no manifest error in its factual findings regarding the invalidity of the donation. The record shows |nthat both Ken and Greg knew there were questions as to whether the donation had been properly done. However, both acted for months as though the donation was proper. Neither took action to investigate the validity of the donation or to complete the transfer of the share. Also, Doris testified that in October 2010 she signed a copy of the donation that was marked “void” after learning there had been a problem with the donation. She did not seek to complete the donation or to properly confect a new act of donation. As of the time of trial she still owned the one share of WEI.
We agree with the trial court’s finding that the donation was invalid. It was not in the form of an authentic act or in compliance with La. C.C. art. 1550. Because the donation was invalid as to form, we need not address the alleged lack of compliance with WEI’s articles of incorporation as they pertain to the transfer of shares. The petitions for injunctive relief, writ of mandamus, and writ of quo warran-to were also properly denied. These claims were based upon the assertions that the donation was valid, that the proxy given by Doris to Greg and the actions taken on December 14, 2010, were invalid, and that Ken owned fifty percent of the shares in WEI. In the absence of a valid donation, Greg properly obtained Doris’s proxy and had the majority shares at the December 14, 2010, shareholder’s meeting. Because the donation was determined to be invalid, the trial court correctly dissolved the temporary restraining order and denied the request for injunctive relief and the petitions for writ of mandamus and quo warranto. These claims are not supported by the evidence in the record.
| ^CONCLUSION
For the reasons explained, we affirm the judgment of the trial court. Costs of this appeal are assessed against the appellant, Kenneth D. Malone.
AFFIRMED.

. See La. R.S. 10:8-102(15) for security, R.S. 10:8-102(4) and (18) for certificated security and uncertificated security; R.S. 10:8-102(17) for security entitlement, R.S. 10:8-501 for securities account, and R.S. 10:9-102(14) and (15) for commodity account and commodity contract.